T.C. Memo. 2009-75

UNITED STATES TAX COURT

CAROLINE MCCALL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

CRAIG GEBO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 26790-06L, 26791-06L.  Filed April 6, 2009.

<u>Woodford G. Rowland</u>, for petitioners.

<u>Kaelyn J. Romey</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  In these consolidated cases petitioners,
pursuant to section 6330,[1] seek review of respondent's

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code, and all Rule references are to the Tax
(continued...)

determinations to proceed with collection of trust fund recovery penalties for the taxable periods ending September 30 and December 31, 2001 (the periods at issue).

We consolidated the cases for purposes of trial, briefing, and opinion. The issues for decision[2] are whether respondent made invalid jeopardy assessments against petitioners and whether respondent abused his discretion by determining that petitioners were not entitled to a streamlined installment agreement.

FINDINGS OF FACT

Some of the facts have been stipulated. We incorporate the stipulation of facts into our findings by this reference. Petitioners resided in California when the petitions were filed.

Respondent issued Letters 1153, Trust Funds Recovery Penalty Letter, to petitioners notifying them of proposed trust fund recovery penalty assessments, and petitioners filed an administrative appeal with respect to the proposed assessments. On December 13, 2005, respondent's Appeals Office made final administrative determinations upholding the proposed assessments. On the same date, the cases were sent to one of respondent's revenue officers, as reflected in Forms 5402, Appeals Transmittal

---

[1](...continued)
Court Rules of Practice and Procedure.

[2]The parties raised several evidentiary issues at trial, and we reserved ruling on some of them. By order dated Mar. 12, 2009, we resolved the remaining issues.

and Case Memo, with the recommendation that respondent make quick assessments against petitioners for the trust fund recovery penalties.

Petitioners' cases were assigned to Lorna Canady (Ms. Canady), who was responsible for reviewing and forwarding to respondent's revenue accounting collection system (RACS), a department in the Ogden Service Center responsible for processing assessments, the documents necessary for assessing the trust fund recovery penalties. On December 20, 2005, respondent assessed trust fund recovery penalties of $16,581.64 and $14,216.84. On February 14, 2006, respondent sent petitioners Letters 1058, Notice of Intent To Levy and Notice of Your Right to a Hearing, with respect to the assessed trust fund recovery penalties. Petitioners timely requested a hearing with respondent's Appeals Office (collection hearing) and their cases were assigned to Settlement Officer Raymundo Jacquez (Mr. Jacquez).

During the collection hearing process Mr. Jacquez sent petitioners' counsel "IMF MCC Transcript-IMF Literal" of petitioners' tax accounts for the periods at issue (disputed transcripts) showing that on December 20, 2005, respondent made jeopardy assessments of $16,581.64 and $14,216.84. After petitioners' counsel questioned the validity of the jeopardy assessments, Mr. Jacquez requested petitioners' trust fund recovery penalty files and reviewed the documents in the files.

In a letter to petitioners' counsel Mr. Jacquez assured him that respondent had not made jeopardy assessments against petitioners and that the disputed transcripts contained an internal clerical error. Mr. Jacquez explained that the error did not materially affect petitioners' rights.

Petitioners' counsel also informed Mr. Jacquez that petitioners wanted to resolve their unpaid liabilities through a streamlined installment agreement. Because petitioners' unpaid assessed liabilities were not $25,000 or less, as required to qualify for a streamlined installment agreement, Mr. Jacquez gave petitioners an opportunity to pay within 10 days the amount of their unpaid liabilities exceeding $25,000. Petitioners did not remit any payment by the deadline, and Mr. Jacquez gave them an additional 10 days to submit payment. Petitioners submitted two checks for the amount of the unpaid liabilities exceeding $25,000 but conditioned the deposit of the checks on the resolution of the jeopardy assessment issue. Mr. Jacquez returned the checks because of the condition petitioners imposed. He explained that petitioners had missed the second deadline to submit payment for consideration of a streamlined installment agreement and that they did not submit financial information for consideration of other collection alternatives. Mr. Jacquez stated that he would recommend sustaining respondent's collection actions.

On November 21, 2006, respondent's Appeals Office sent each petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 sustaining respondent's proposed collection actions. An attachment to the notices of determination stated that research of official records and transcripts established that the assessments were not jeopardy assessments and that petitioners were not entitled to any collection alternatives, including the streamlined installment agreement, because they had not provided Mr. Jacquez with the requested payments or financial information. Petitioners timely filed petitions contesting respondent's determinations.

OPINION

## I.   Section 6330

The Secretary is authorized to collect tax by levy upon the taxpayer's property if any taxpayer liable to pay any tax neglects or refuses to pay such tax within 10 days after notice and demand for payment. Sec. 6331(a). Section 6330(a) requires the Secretary to send written notice to the taxpayer of the taxpayer's right to request a section 6330 hearing before a levy is made. If the taxpayer makes a timely request for a hearing, a hearing shall be held by the Internal Revenue Service (IRS) Office of Appeals. Sec. 6330(b).

At the hearing a taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the

appropriateness of the collection action, and collection alternatives, such as an installment agreement. Sec. 6330(c)(2)(A). Additionally, the taxpayer may contest the validity of the underlying tax liability, but only if the taxpayer did not otherwise have an opportunity to dispute the tax liability. Sec. 6330(c)(2)(B).

Following a hearing the Appeals Office must issue a notice of determination regarding the appropriateness of the proposed levy action. In making a determination, the Appeals Office must consider: (1) The verification presented by the Secretary that the requirements of applicable law and administrative procedures have been met; (2) the relevant issues raised by the taxpayer; and (3) whether the proposed collection action appropriately balances the need for efficient collection of taxes with a taxpayer's concerns regarding the intrusiveness of the proposed collection action. Sec. 6330(c)(3). If the taxpayer disagrees with the Appeals Office's determination, the taxpayer may seek judicial review by petitioning this Court.[3] Sec. 6330(d).

_____

[3]Before the enactment of the Pension Protection Act of 2006 (PPA), Pub. L. 109-280, sec. 855, 120 Stat. 1019, we had jurisdiction to review the Commissioner's determinations in cases where the underlying tax liability was of a type that normally fell within our deficiency jurisdiction. See, e.g., Zapara v. Commissioner, 126 T.C. 215, 227 (2006), supplementing 124 T.C. 223 (2005). However, the PPA, which applies to determinations made after Oct. 16, 2006, expanded our jurisdiction to review the Commissioner's collection determinations with respect to any type of underlying tax, including trust fund recovery penalties.
(continued...)

II. Assessments

A. Jurisdiction and Standard of Review

Section 6330(d)(1) grants this Court jurisdiction to review determinations made by the Appeals Office in the collection hearing, including the Appeals Office's determinations that the requirements of applicable law and administrative procedures have been met. See sec. 6330(c)(1). In the notices of determination the Appeals Office determined that all requirements of applicable law and administrative procedures were satisfied and that the assessments were valid. Thus, we have jurisdiction to review the Appeals Office's determinations that respondent followed legal and administrative procedural requirements in assessing the trust fund recovery penalties.

Although the Court generally will review a determination of the Appeals Office for abuse of discretion when, as in these cases, the tax liability is not at issue, see Lunsford v. Commissioner, 117 T.C. 183, 185 (2001), respondent concedes his determination regarding the assessments is subject to de novo review. In accordance with respondent's concession, we shall

---

3(...continued)
Ginsberg v. Commissioner, 130 T.C. 88, 91-92 (2008). Because the determinations in these cases were made after Oct. 16, 2006, we have jurisdiction to review respondent's determinations to proceed with the enforced collection of the trust fund recovery penalties.

examine the trial record de novo to decide whether respondent made invalid jeopardy assessments against petitioners.

B.  <u>Burden of Proof</u>

Generally, the Commissioner's determination is presumed correct, and the taxpayer bears the burden of proving that the determination is erroneous.  Rule 142(a)(1); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).  Petitioner contends, however, that respondent should bear the burden of proving the assessments were valid.  In support of their contention, petitioners cite <u>Cohen v. Commissioner</u>, 266 F.2d 5 (9th Cir. 1959), remanding T.C. Memo. 1957-172, and <u>Estate of Mitchell v. Commissioner</u>, 250 F.3d 696 (9th Cir. 2001), affg. in part, vacating in part and remanding 103 T.C. 520 (1994) and T.C. Memo. 1997-461.

In <u>Cohen</u> the Court of Appeals for the Ninth Circuit stated:

> When the Commissioner's determination has been shown to be invalid, the Tax Court must redetermine the deficiency.  The presumption as to the correctness of the Commissioner's determination is then out of the case.  The Commissioner and not the taxpayer then has the burden of proving whether any deficiency exists and if so the amount.  It is not incumbent upon the taxpayer under these circumstances to prove that he owed no tax or the amount of the tax which he did owe. [<u>Cohen v. Commissioner</u>, <u>supra</u> at 11; fn. refs. and citation omitted.]

<u>Cohen</u>, however, is distinguishable from this case.  <u>Cohen</u> involved a redetermination of a deficiency that the taxpayers established was erroneous and arbitrary.  <u>Id.</u>  As the Court of Appeals recognized in <u>Cohen</u>, the burden is on the taxpayer to

show that the Commissioner's determination is invalid.  <u>Id.</u>  If the taxpayer does so, then the Commissioner must come forward with proof of the tax owed by the taxpayer.  <u>Id.</u>

Petitioners have not shown and do not argue that respondent's determinations of the trust fund recovery penalties were erroneous or arbitrary.  At most, petitioners have shown that a labeling error occurred on the disputed transcripts.  They have not proven that respondent acted arbitrarily or erroneously with respect to the assessment of the trust fund recovery penalties.

The other case upon which petitioners rely, <u>Estate of Mitchell v. Commissioner</u>, <u>supra</u>, is also distinguishable.  In <u>Estate of Mitchell</u> the Court of Appeals for the Ninth Circuit held that the burden of proof shifted to the Commissioner because the taxpayer established that the Commissioner's determination of a tax deficiency was arbitrary and excessive.  <u>Id.</u> at 702. Again, petitioners have not proven respondent acted arbitrarily.

The cases petitioners cite do not apply here.  The burden of proof remains with petitioners.[4]  See Rule 142(a)(1).

---

[4]Petitioners do not contend that sec. 7491(a), which shifts the burden of proof to the Commissioner if its requirements are met, applies, and the record does not contain sufficient evidence to establish that petitioners satisfy the sec. 7491(a) requirements.

C.    Applicable Law

1.    Trust Fund Recovery Penalty

Section 6672(a) imposes a penalty (commonly known as a trust fund recovery penalty) on any person required to collect, truthfully account for, and pay over tax who willfully fails to do so or who willfully attempts to evade or defeat any such tax. The penalty applies to an officer or employee of a corporation or a member or employee of a partnership who is under a duty to perform the actions described in section 6672(a) and who willfully fails to do so.  Sec. 6671(b).  The penalties are assessed and collected in the same manner as taxes.  Sec. 6671(a).

Before a trust fund recovery penalty can be assessed, the Secretary must notify the taxpayer in writing by mail to the taxpayer's last known address or in person at least 60 days before giving notice and demand for payment that the taxpayer shall be subject to an assessment of such penalty.  Sec. 6672(b)(1) and (2).  If the taxpayer is properly notified before the expiration of the period of limitations for making assessments under section 6501,[5] the period of limitations for making an assessment of the trust fund recovery penalty shall not expire before the later of the date 90 days after the date the

---

[5]Sec. 6501 generally requires that the Commissioner assess tax within 3 years after the taxpayer files a return.

notice was mailed or delivered or, if there is a timely protest of the proposed assessment, the date 30 days after the Secretary makes a final administrative determination with respect to such protest. Sec. 6672(b)(3). However, the notification procedures do not apply to a jeopardy assessment. Sec. 6672(b)(4).

### 2. Jeopardy and Quick Assessments

The Secretary is authorized and required to make the assessments of all taxes, including assessable penalties. Sec. 6201(a). Assessments are made by recording the liability of the taxpayer in the Office of the Secretary in accordance with rules or regulations prescribed by the Secretary. Sec. 6203. The Secretary, at any time within the period prescribed for assessment, may make a supplemental assessment whenever it is ascertained that any assessment is imperfect or incomplete in any material respect. Sec. 6204(a).

The Secretary is authorized to assess a deficiency immediately if the Secretary believes that the assessment or collection of the deficiency will be jeopardized by delay, and notice and demand shall be made by the Secretary for the payment thereof. Sec. 6861(a). This immediate assessment is known as a jeopardy assessment. Assessment or collection of a deficiency is determined to be in jeopardy if one of the following conditions exist: (1) The taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself or herself;

(2) the taxpayer is or appears to be designing quickly to place property beyond the reach of the Government; or (3) the taxpayer's financial solvency is or appears to be imperiled. Sec. 301.6861-1(a), Proc. & Admin. Regs.; sec. 1.6851-1(a), Income Tax Regs. A jeopardy assessment may not be made unless the IRS Chief Counsel (or his delegate) gives written approval of the assessment. Sec. 7429(a)(1)(A).

Within 5 days after a jeopardy assessment is made, the Secretary must provide the taxpayer with a written statement of information on which the Secretary relied in making the jeopardy assessment. Sec. 7429(a)(1)(B). The taxpayer has 30 days from the date the taxpayer is given the written statement to request an administrative review of the assessment. Sec. 7429(a)(2). After the administrative review, the taxpayer may seek judicial review of the assessment in a U.S. District Court. Sec. 7429(b)(1) and (2).

In contrast, a quick assessment is an internal administrative term used to identify assessments made, for example, when the period of limitations on assessment will soon expire, Internal Revenue Manual (IRM) pt. 4.4.25.2.2 (Feb. 8, 1999). Under the IRM, a quick assessment of a trust fund recovery penalty is made when the period of limitations on assessment will expire in 30 days, IRM pt. 5.7.6.4(1) (Apr. 13, 2006). Unlike a jeopardy assessment, a quick assessment does not

require Chief Counsel approval, and there is no requirement to provide the taxpayer written notice of information on which the Secretary relied in making the quick assessment within 5 days after the assessment.

D.  Analysis

Petitioners argue that the December 20, 2005, assessments are invalid jeopardy assessments and must be abated.  In support of their argument, petitioners introduced into evidence the disputed transcripts provided to them during the collection hearing, showing respondent made jeopardy assessments. Respondent, however, argues that the disputed transcripts reflected quick assessments that were mislabeled as jeopardy assessments.  Respondent contends that the mislabeling error does not render the assessments invalid.

At trial both parties presented the testimony of several of respondent's employees regarding the assessments made against petitioners, and we find their testimony credible.  Ms. Canady, a tax technician responsible for reviewing documents necessary for requesting and making assessments and for forwarding those documents to RACS so that assessments can be made, testified that she followed all procedures for making valid quick assessments of trust fund recovery penalties.  Her testimony included the following.  Ms. Canady received from a revenue officer Forms 2749, Request for Trust Fund Recovery Penalty Assessment,

requesting quick assessments for the periods at issue.  She also received from respondent's Appeals Office the Forms 5402 recommending that respondent make quick assessments.  Ms. Canady prepared Forms 2859, Request for Quick or Prompt Assessment, requesting quick assessments against petitioners of $16,581.64 and $14,216.84 for the periods at issue, and her manager signed the forms on December 15, 2005.  Ms. Canady signed Forms 3210, Document Transmittal, requesting quick assessments for the periods at issue, and on December 15, 2005, Ms. Canady sent by facsimile to RACS the Forms 2749, 5402, 2859, and 3210.  On or around December 21, 2005, RACS returned to Ms. Canady the Forms 3210 with RACS's date stamp, handwritten notations of the document locator numbers[6] and assessment date, a signature showing the Forms 3210 were received and verified, and an acknowledgment date of December 20, 2005.  She also received from RACS certain billing statements for the periods at issue showing assessments were made on December 20, 2005.  Ms. Canady reviewed the billing statements to determine that petitioners' names and addresses, the document locator numbers, and the assessment amounts were correct and then mailed two copies to petitioners.

Respondent introduced into evidence the Forms 2749, 5402, 2859, and 3210, and the billing statements, that Ms. Canady

---

[6]Document locator numbers are numbers assigned to all transactions, including assessments, posted on respondent's integrated data retrieval system.

either prepared or reviewed in the process of requesting assessments against petitioners, and none of the forms or the billing statements indicates that jeopardy assessments were requested or made.  In addition, Ms. Canady, who is not authorized to make jeopardy assessments, credibly testified that when she received the documents from RACS after respondent made the assessments, nothing indicated that respondent made jeopardy assessments.

Tim Mathers, respondent's court witness coordinator in criminal investigations, whose duties include ordering returns from files, preparing certified transcripts in preparation for trial, and testifying at trials, testified about the document locator numbers that were assigned to petitioners' assessments. He testified that the document locator numbers on the disputed transcripts, despite the jeopardy assessment notations, reflected trust fund recovery penalty quick assessments.  Mr. Jacquez also testified that the document locator numbers assigned to the assessments in these cases indicated that respondent made quick assessments.  Mr. Jacquez testified that during the collection hearing he reviewed the revenue officer's case history and the various transaction codes relating to assessments and determined that there were no jeopardy assessments.

All testimonial and documentary evidence, except the disputed transcripts given to petitioners' counsel during the

collection hearing, indicates that all procedures were followed to request and make quick assessments against petitioners. All of respondent's witnesses at trial credibly testified that respondent made quick assessments rather than jeopardy assessments. Petitioners did not introduce any testimony or documents other than the disputed transcripts to support their contention that respondent made jeopardy assessments against petitioners.

We also note that petitioners have not shown that they were prejudiced by the error on the disputed transcripts. Before respondent assessed the trust fund recovery penalties, petitioners received Letters 1153 notifying them of the proposed assessments, and they requested and received an administrative hearing with respondent's Appeals Office regarding the trust fund recovery penalties. Because jeopardy assessments may be assessed immediately, see sec. 6861(a), petitioners would not have received preassessment notices or had the opportunity for a preassessment administrative hearing if the assessments that were made had been jeopardy assessments, see sec. 6672(b)(4). In addition, petitioners received a collection hearing under section 6330 before levy, which strongly suggests that quick assessments and not jeopardy assessment were made.[7] Despite the jeopardy

_____

[7]In cases where the Secretary has made a finding that the collection of tax is in jeopardy, sec. 6330 does not apply except
(continued...)

assessment entry on the disputed transcripts, petitioners have received all notices and rights to which they were entitled under sections 6672 and 6330.

The record provides ample grounds for concluding that valid quick assessments were made against petitioners for the periods at issue and that the entry on the disputed transcripts regarding a jeopardy assessment is an error that does not invalidate the assessments.[8]  We so hold.

III. Collection Alternatives

Petitioners argue that if we conclude that the assessments are valid, we should remand the case to the Appeals Office so that petitioners can enter into a streamlined installment agreement.[9]  Specifically, petitioners argue that because of the assessment issue, Mr. Jacquez did not give proper attention to collection alternatives.

---

[7](...continued)
that the taxpayer is given the opportunity for a collection hearing within a reasonable time after the levy.  See sec. 6330(f)(1); Zapara v. Commissioner, 124 T.C. at 241.

[8]Our conclusion is in accordance with Dallin v. United States, 62 Fed. Cl. 589, 601 (2004).  In Dallin the Court of Federal Claims held that a trust fund recovery penalty assessment on a Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, that was mislabeled as a jeopardy assessment, instead of a quick assessment, did not render the assessment invalid where the assessment was otherwise valid.

[9]Petitioners do not argue that the burden of proof shifts to respondent with respect to our review of respondent's determination regarding collection alternatives, and accordingly, the burden of proof remains with petitioners.  See Rule 142(a).

We review respondent's Appeals Office determination with respect to collection alternatives for an abuse of discretion. See Lunsford v. Commissioner, 117 T.C. at 185; Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 182 (2000). In reviewing for an abuse of discretion, we do not conduct an independent review of whether any collection alternative proposed by a taxpayer was acceptable or substitute our judgment for that of the Appeals Office. Rather, we must uphold the Appeals Office determination unless it is arbitrary, capricious, or without sound basis in fact or law. See, e.g., Murphy v. Commissioner, 125 T.C. 301, 320 (2005), affd. 469 F.3d 27 (1st Cir. 2006); Hansen v. Commissioner, T.C. Memo. 2007-56; Catlow v. Commissioner, T.C. Memo. 2007-47.

Section 6159(a) authorizes the Secretary to enter into written agreements with any taxpayer under which such taxpayer is allowed to make payment on any tax in installment payments if the Secretary determines that such agreement will facilitate full or partial collection of such liability. A streamlined installment agreement is an installment agreement that may be processed quickly and without financial analysis or managerial approval and is available for taxpayers whose aggregate unpaid balance of assessments is $25,000 or less. IRM pt. 5.14.5.1(1) (Mar. 30, 2002); IRM pt. 5.14.5.2(1) (July 12, 2005). Accepting or rejecting an installment agreement proposed by a taxpayer is

within the discretion of the Commissioner.[10]  See sec. 301.6159-1(b)(1)(i), Proced. & Admin. Regs.

During the collection hearing, after petitioners requested a streamlined installment agreement, Mr. Jacquez gave petitioners the opportunity to submit a payment for the amount of assessed trust fund recovery penalties that exceeded $25,000, as required for a streamlined installment agreement.  Petitioners submitted two checks that could not be deposited, and Mr. Jacquez returned those checks because he was not authorized to hold checks.  Because petitioners' outstanding liability exceeded $25,000, petitioners could not enter into a streamlined installment agreement.  Therefore, Mr. Jacquez did not abuse his discretion in rejecting the streamlined installment agreement.

In addition, petitioners did not provide the requested financial information that Mr. Jacquez needed to consider other collection alternatives such as a regular installment agreement or an offer-in-compromise.  Accordingly, we conclude that he did not abuse his discretion by not considering other collection alternatives.  See, e.g., Prater v. Commissioner, T.C. Memo. 2007-241.  Therefore, respondent's determinations to proceed with the proposed collection actions were not an abuse of discretion.

---

[10]Although not applicable here, sec. 6159(c) requires the Secretary to enter into an installment agreement in certain circumstances generally involving tax liabilities of less than $10,000.

We have considered all arguments raised by either party, and to the extent not discussed, we find them to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decisions will be entered for respondent</u>.