T.C. Memo. 2010-210


UNITED STATES TAX COURT



DAN K. AND PAULA SHAW, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 1642-08L.              Filed September 27, 2010.


     Ps filed a petition for judicial review pursuant
to sec. 6320, I.R.C., in response to a determination by
R that lien action was appropriate.

     <u>Held</u>:  Ps are liable for the addition to tax for
failure to pay their tax liability in a timely manner.
R's filing of the lien to protect the Government's
interest and denial of an installment agreement do not
constitute an abuse of discretion.  R's determination
to proceed with collection action is sustained.



<u>Robert E. McKenzie</u> and <u>Kathleen M. Lach</u>, for petitioners.

<u>Gorica B. Djuraskovic</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  This case is before the Court on a petition for judicial review of a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330.[1]  The issues for decision are (1) whether petitioners are liable for the failure to pay addition to tax imposed by section 6651(a)(2); (2) whether respondent abused his discretion in not agreeing to an installment payment agreement or offer-in-compromise; and (3) whether respondent may proceed with collection by means of a filed tax lien with respect to petitioners' Federal income tax liability for the 2005 tax year.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts and the accompanying exhibits are hereby incorporated by reference into our findings.  Petitioners resided in Nevada when they filed their petition.

Dan Shaw is a real estate developer in Las Vegas, Nevada, and has owned his own real estate development business since 1990.  Early in this decade he was involved with the Castaways hotel and casino, which closed in 2004 because of financial difficulties.  Ms. Shaw is still involved in expensive litigation concerning union dues and health benefits which arose as the

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) of 1986, as amended.

result of the Castaways' closure.  Other real property

investments or investment entities in which Mr. Shaw was involved

have suffered foreclosures or deeds in lieu of foreclosures.  In

2006 these events resulted in approximately $2.8 million of

taxable income, a portion of which was so-called phantom income

from relief of indebtedness reported on Schedule E, Supplemental

Income and Loss, of petitioners' Form 1040, U.S. Individual

Income Tax Return.

In 2006 Mr. Shaw began providing consulting services to

banks to supplement his income from his real estate business,

which was suffering because of poor real estate and economic

conditions.

Petitioners presumably filed their 2005 Federal income tax

return by October 15, 2006, its extended due date.  It was

received by respondent on October 20, 2006, showing tax due which

was not paid with the return.  On December 4, 2006, the tax shown

on the return was assessed, together with a $34,201.96 addition

to tax under section 6651(a)(2) for failure to timely pay the

Federal income tax liability, a $2,351.71 addition to tax under

section 6654(a) for failure to make estimated tax payments, and

statutory interest.[2]  On December 20, 2006, petitioners submitted

---

[2]Respondent assessed $37,376.43 of additional income tax, a
$25,658.13 addition to tax under sec. 6651(a)(2), and $24,557.90
of additional statutory interest on Mar. 19, 2007, and abated
$144,285 of previously assessed 2005 tax on Dec. 31, 2007.

to respondent a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals.

Thereafter, on April 10, 2007, respondent filed a Notice of Federal Tax Lien with respect to petitioners' unpaid tax liability for 2005.[3] Respondent sent petitioners a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 for 2005 on April 19, 2007. On May 16, 2007, petitioners responded with a timely Form 12153, Request for a Collection Due Process Hearing, in which they (1) asserted that "The filing of a federal tax lien at this time will hinder the taxpayers' ability to liquidate assets and/or secure financing in order to pay the liability in full"; (2) claimed entitlement to an offer-in-compromise or an installment agreement; and (3) disagreed with the amount of their tax liability and argued that they had reasonable cause for failing to pay their tax liability. A

---

[3]The notice of Federal tax lien indicates that it was "prepared and signed" on Apr. 10, 2007. Although the parties have stipulated that it was also filed on that date, a copy of the certified literal transcript for petitioners' 2005 tax year appears to indicate that it was actually filed on Apr. 13, 2007. The apparent discrepancy is not an issue in this case because petitioners do not argue that respondent failed to send them a notification letter within 5 business days of filing the notice as required by sec. 6320(a). Moreover, even if the notification letter was untimely, it does not give rise to an abuse of discretion. Petitioners nevertheless timely requested a hearing within the 30-day period beginning on the day after the fifth business day following the filing of the notice of Federal tax lien. See Bruce v. Commissioner, T.C. Memo. 2007-161.

collection due process hearing was scheduled for July 31, 2007, at 10 a.m.

On July 25, 2007, petitioners sent respondent additional financial information for consideration.  Thereafter, on August 17, 2007, petitioners sent respondent's settlement officer, Michael A. Freitag, a request for an installment agreement to address their unpaid 2003 and 2005 Federal income tax liabilities.

In order to pay off the 2005 tax liability of over $1 million, petitioners proposed the following payment plan:  (1) A lump-sum downpayment of $100,000 within 10 days of acceptance of the agreement, (2) monthly payments of $1,200 beginning 30 days after the lump-sum downpayment and continuing for 53 months, except as provided in (3) below, (3) a lump sum payment of $300,000 in lieu of the 24th payment of the installment agreement, and (4) a balloon payment of the balance due in the 54th month.  Petitioners indicated that Dan Shaw's "income at any given month is unpredictable".  He "does not receive a regular ongoing salary" but rather "receives sporadic distributions from his various partnership interests generally related to real estate activity, which at the moment is in a downturn."

In a September 7, 2007, response Mr. Freitag listed several problems with the proposal, including that (1) "the monthly income on the current 433-A submitted shows as $57,000+ per month

and not the $26,000+ per the W-2's"; (2) "the expenses claimed are excessive and exceed the national standards"; and (3) "it appears that the taxpayer can liquidate assets and business interests and pay the liability in full."

On September 21, 2007, petitioners sent Mr. Freitag a letter in which they offered to make additional annual lump sum payments and disagreed with Mr. Freitag's "strict adherence to the use of IRS national standards for expenses, without consideration of the taxpayers' unique facts and circumstances". The letter also explained that Mr. Shaw's partial interests in real estate projects were not "readily liquid" because they were often small minority ownership positions and market conditions were depressed. On October 15, 2007, petitioners sent Mr. Freitag an unsigned copy of their 2006 tax return. On October 23 and 25, 2007, petitioners sent Mr. Freitag updated financial information.

On December 20, 2007, respondent sent petitioners two separate Notices of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 for 2005. Attachments to the notices of determination stated that petitioners "are not requesting release or withdrawal of the Notice of Federal Tax Lien, and there is no indication they meet the conditions for withdrawal or release." The attachments further indicated that petitioners did not raise the issue of reasonable cause at their hearing.

The attachments also call into question petitioners' claims of receiving only sporadic income. In that regard, the attachments state that respondent

> is currently receiving approximately $13,000.00 a month from a levy for periods that are not subject to this CDP [collection due process] hearing. In addition, the Revenue Officer's history indicated that the representative stated on three separate occasions during 2007 that the levied year would be full paid within a few weeks.

The attachments indicated that Mr. Freitag had determined that petitioners' income was approximately $58,000 per month[4] and that their claimed expenses were "excessive and exceeded national standards." Finally, the attachments stated that respondent took proper action in filing a notice of Federal tax lien.

Petitioners filed their timely petition with this Court on January 18, 2008. Petitioners assert in the petition that at the hearing and in the determination letter respondent abused his discretion by (1) denying their request for a reasonable installment agreement, (2) failing to consider abatement of penalties for reasonable cause, and (3) sustaining the lien against petitioners.

Petitioners assert respondent erred in sustaining the lien because he ignored facts concerning petitioners' legal and accounting expenses, other secured debt, and "fluctuating

---

[4]Any discrepancy between this $58,000 amount and the "$57,000 +" amount referenced by Mr. Freitag in his Sept. 7, 2007, letter is not explained by the record.

income". Petitioners also assert that respondent prematurely issued the notices of determination without a final courtesy call or counteroffer and failed to determine whether petitioners had reasonable cause for not paying their 2005 taxes.

More specifically, petitioners claim that the $58,000 was an average monthly figure and that they did not receive this amount on a regular monthly basis. They acknowledge that their expenses were greater than respondent's national standards but cite respondent's ability to deviate from the standards. In their view, reasonable cause for failing to timely pay taxes existed in the light of their financial circumstances, which were beyond their control.

Respondent disagrees that petitioners provided sufficient evidence to entitle them to an abatement of penalties for reasonable cause. He contends Mr. Freitag considered petitioners' sporadic income but nevertheless acted within his discretion in rejecting the installment agreement. Respondent argues, therefore, that the conditions for withdrawing a notice of Federal tax lien under section 6323(j) were not met and a Federal tax lien is appropriate and one of the least intrusive methods of collection.

OPINION

I. <u>Collection Actions--General Rules</u>

Section 6321 imposes a lien in favor of the United States upon all property and rights to property of a taxpayer who fails to pay any tax liability after demand for payment. The lien generally arises at the time assessment is made. Sec. 6322. Section 6323, however, provides that such lien shall not be valid against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until the Secretary files a notice of lien with the appropriate public officials. Section 6320 then sets forth procedures applicable to afford protections for taxpayers in lien situations.

Section 6320(a)(1) establishes the requirement that the Secretary notify in writing the person described in section 6321 of the filing of a notice of lien under section 6323. This notice required by section 6320 must be sent not more than 5 business days after the notice of tax lien is filed and must advise the taxpayer of the opportunity for administrative review of the matter in the form of a hearing before the Internal Revenue Service Office of Appeals. Sec. 6320(a)(2) and (3). Section 6320(b) and (c) grants a taxpayer who so requests the right to a fair hearing before an impartial Appeals officer, generally to be conducted in accordance with the procedures described in section 6330(c), (d), and (e).

Section 6330(c) addresses the matters to be considered at the hearing:

> SEC. 6330(c). Matters Considered at Hearing.--In the case of any hearing conducted under this section--
>
> (1) Requirement of investigation.--The appeals officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met.
>
> (2) Issues at hearing.--
>
> (A) In general.--The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including--
>
> (i) appropriate spousal defenses;
>
> (ii) challenges to the appropriateness of collection actions; and
>
> (iii) offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise.
>
> (B) Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

Once the Appeals Office has issued a determination regarding the disputed collection action, section 6330(d) allows the taxpayer to seek judicial review in the Tax Court. In considering whether taxpayers are entitled to any relief from the

Commissioner's determination, this Court has established the following standard of review:

> where the validity of the underlying tax liability is properly at issue, the Court will review the matter on a de novo basis. However, where the validity of the underlying tax liability is not properly at issue, the Court will review the Commissioner's administrative determination for abuse of discretion. [Sego v. Commissioner, 114 T.C. 604, 610 (2000).]

## II.  Challenges to Underlying Liabilities

Challenges to the underlying tax liability may be raised only where the taxpayer did not receive a notice of deficiency or otherwise have an opportunity to dispute such liability.  See sec. 6330(c)(2)(B).

Respondent assessed an addition to tax under section 6651(a)(2) with respect to petitioners' 2005 tax year. Petitioners challenged their liability for the addition to tax in their May 16, 2007, hearing request, arguing that they had reasonable cause for their failure to pay.  Although they did not pursue the reasonable cause defense at their section 6330 hearing, they raise it anew in this proceeding.[5]

---

[5]Petitioners claim that they did not have enough time to raise their reasonable cause defense before Appeals because respondent prematurely issued the notices of determination.  We note that there is no requirement that respondent's Appeals Office wait a certain amount of time before issuing a notice of determination.  See Clawson v. Commissioner, T.C. Memo. 2004-106. To the contrary, the Appeals Office shall "attempt to conduct a * * * [sec. 6330] hearing and issue a Notice of Determination as expeditiously as possible under the circumstances."  Sec. 301.6320-1(e)(3), Q&A-E9, Proced. & Admin. Regs.  The settlement
(continued...)

Because petitioners did not receive a notice of deficiency for their 2005 tax year and did not otherwise have an opportunity to dispute their tax liability, they are permitted to challenge their underlying tax liability for 2005, including their liability for the addition to tax. See sec. 6330(c)(2)(B); Katz v. Commissioner, 115 T.C. 329, 339 (2000) (defining "underlying tax liability" for section 6330 purposes to include additions to tax). Although respondent contends that we should review the Appeals Office's determination regarding the section 6651(a)(2) addition to tax under an abuse of discretion standard, we will instead review the matter de novo, as we would any other review of an underlying tax liability. See also Sego v. Commissioner, supra at 610; Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

Section 6651(a)(2) imposes an addition to tax for failure to timely pay the amount of tax shown on a return. The addition is equal to 0.5 percent of the amount shown as tax on the return for

---

5(...continued)
officer in this case issued the notices of determination almost 6 months after the sec. 6330 hearing. In the interim, the settlement officer corresponded with petitioners and considered evidence and arguments they submitted. The record does not reflect that respondent issued the notices of determination prematurely.

In any event, petitioners clearly raised their reasonable cause defense in their hearing request, and we assume arguendo that petitioners have preserved this right. See Meeh v. Commissioner, T.C. Memo. 2008-282 (reviewing taxpayers' underlying liability where the issue was raised only in a sec. 6330 hearing request and before the Court); see also sec. 301.6320-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

each month, or fraction thereof, during which the failure to pay continues, up to a maximum of 25 percent. See id. The date prescribed for payment of income tax is the due date for filing the return determined without regard to any extension of time for filing. See id.; sec. 6151(a).

The Commissioner has the burden of production with respect to a taxpayer's liability for the addition to tax. Sec. 7491(c). To meet that burden, respondent must come forward with sufficient evidence indicating that it is appropriate to impose the addition to tax. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Respondent has met that burden. However, the section 6651(a)(2) addition to tax is not imposed if the taxpayer proves that the failure to pay is due to reasonable cause and not willful neglect. Reasonable cause for failing to pay is shown if the taxpayer

> exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship * * * if he paid on the due date. * * * [A] taxpayer who invests funds in speculative or illiquid assets has not exercised ordinary business care and prudence in providing for the payment of his tax liability unless, at the time of the investment, the remainder of the taxpayer's assets and estimated income will be sufficient to pay his tax or it can be reasonably foreseen that the speculative or illiquid investment made by the taxpayer can be utilized (by sale or as security for a loan) to realize sufficient funds to satisfy the tax liability. A taxpayer will be considered to have exercised ordinary business care and prudence if he made reasonable efforts to conserve sufficient assets in marketable form to satisfy his tax liability and nevertheless was

> unable to pay all or a portion of the tax when it became due.

Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Petitioners did not timely pay their 2005 tax liability. They claim, however, that their failure to pay was due to reasonable cause and that they are therefore not liable for a section 6651(a)(2) addition to tax. Petitioners attribute their failure to pay to an economic downturn beginning in late 2006 and to the aftermath of a failed investment. They cite a reduction in their wages and investment income, an increase in expenses due to settlements and accounting and legal fees, and a tax liability resulting largely from cancellation of indebtedness income.

To support their argument, petitioners introduced a Form 433-A dated December 20, 2006. It contains petitioners' estimates of their monthly income and expenses as of December 20, 2006. Mr. Shaw also testified about petitioners' income and expenses during the period August through October 2007.

Given the record before us, we cannot conclude that petitioners had reasonable cause for their failure to timely pay their 2005 tax liability. Although we do not doubt that petitioners were negatively affected by the economic downturn in late 2006, the focus of our analysis is earlier. See generally Godwin v. Commissioner, T.C. Memo. 2003-289 (rejecting taxpayer's argument that he could not pay his 1997 Federal income tax

liability because he did not receive enough income in subsequent years), affd. 132 Fed. Appx. 785 (11th Cir. 2005).

Petitioners' 2005 tax was due on April 15, 2006. See secs. 6072(a), 6151(a). The evidence petitioners provided, however, pertains only to their ability to pay in December 2006 and during the period August to October 2007. Petitioners have provided only limited evidence regarding their ability to pay as of the date payment was actually due, and we are unable to presume that any such evidence would be favorable to petitioners. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

Indeed, to the extent petitioners' failure to pay was caused by an economic downturn in late 2006, it stands to reason that petitioners had a greater ability to pay on April 15, 2006, before the downturn. Petitioners' net worth was invested almost entirely in leveraged real property. While there was some diversification of the real property investments, which included a Houston, Texas, office building and some S corporation, partnership, or LLC interests, the portfolio was not diversified with more liquid stocks and bonds or money market investments and was very illiquid. The latter problem was aggravated by the fact that the interests owned were in closely held S corporations, partnerships, or LLCs and were by and large minority interests.

Given the highly leveraged nature of petitioners' business, the lack of liquidity was not up to the prudent man standard. We have some sympathy for the "phantom income" problem, which often arises in economic downturns because of depreciation on highly leveraged debt-financed properties.[6] Nevertheless, this is foreseeable and was not the only income at issue here. It is the duty of taxpayers with those investments to provide reasonable liquid reserves or a liquidity source to protect the fisc against foreseeable economic downturns. Petitioners have failed to meet their burden of proving reasonable cause and are thus liable for the section 6651(a)(2) addition to tax.[7]

---

[6]The record does not permit an accurate determination of the source of the Castaways and S corporation, partnership, or LLC income, and the parties dispute how much was due to "phantom income" and how much was rental income. For example, there was apparently substantial rental income generated by El Capitan Associates, LLC, in 2005.

[7]Even if petitioners had proved that they were unable to pay their 2005 Federal income tax liability when it was due without suffering undue hardship, we are not convinced that they exercised ordinary business care and prudence in providing for payment of the liability. See sec. 301.6651-1(c)(1), Proced. & Admin. Regs. As a real estate developer in Las Vegas with almost two decades of experience, Mr. Shaw knew, or should have known, that real estate investments in office buildings, hotels, and casinos are often boom and bust. The failure of the Castaways-- hardly a remote possibility--resulted in petitioners' being liable for tax on some cancellation of indebtedness income. Nevertheless, petitioners did not set aside money or marketable assets that could have been used to pay that liability. According to Mr. Shaw's testimony, petitioners pledged most of their assets to raise capital for the Castaways hotel and casino and faced substantial lawsuits as the result of labor disputes and unfunded liabilities resulting from the Castaways.

III.  <u>Installment Agreement</u>

Section 6159(a) gives the Secretary discretionary authority "to enter into written agreements with any taxpayer under which such taxpayer is allowed to make payment on any tax in installment payments if the Secretary determines that such agreement will facilitate full or partial collection of such liability."  The Commissioner has the discretion to accept or reject an installment agreement proposed by a taxpayer.  See sec. 301.6159-1(b)(1)(i), Proced. & Admin. Regs.  We review the Commissioner's rejection of an installment agreement for abuse of discretion.  See <u>Orum v. Commissioner</u>, 123 T.C. 1, 12-13 (2004), affd. 412 F.3d 819 (7th Cir. 2005).  We do not conduct an independent review of what would be an acceptable collection alternative, nor do we substitute our judgment for that of the Appeals Office.  See <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), affd. 469 F.3d 27 (1st Cir. 2006); <u>McCall v. Commissioner</u>, T.C. Memo. 2009-75.

Because the amount due exceeds $10,000, petitioners are not guaranteed an installment agreement by section 6159(c). Petitioners are also not eligible for a so-called streamlined installment agreement because their liability exceeds $25,000. See IRM pt. 5.14.1.2(4), 5.14.5.2(1) (Sept. 26, 2008); IRS News Release IR-2002-41 (Apr. 3, 2002).  Petitioners must, therefore, qualify under the existing and proposed regulations section

301.6159-1, Proced. & Admin. Regs.[8]  In both instances, section 301.6159-1(a), Proced. & Admin. Regs., indicates that an installment agreement is authorized if the Commissioner "determines that such an installment agreement will facilitate the collection of the tax liability" in whole or in part. Likewise, the filing of a notice of tax lien as a condition of an installment agreement or in conjunction with one is specifically authorized by section 301.6159-1(d), Proced. & Admin. Regs., now section 301.6159-1(c)(3)(iii)(B), Proced. & Admin. Regs. (permitting the agreement to "contain terms that protect the interests of the Government").

The settlement officer considered at least two versions of petitioners' proposed installment agreement providing for $100,000 of upfront earnest money, monthly installments of $1,200 per month with certain specified annual balloon payments.  But he rejected them as not facilitating collection or being in the best interests of the Government.  His explanation noted that the Internal Revenue Service was already collecting $13,000 a month from a levy source with respect to other tax periods and his analysis that, on average, petitioners could pay up to $58,000 per month against their tax liability.  He also believed

---

[8]The proposed regulation was originally published in the Fed. Reg. on Dec. 31, 1997, but was withdrawn on Mar. 5, 2007, when a newer version of the proposed regulation was also published in the Fed. Reg.  That latter version was adopted by Treas. Doc. 9473 (Nov. 24, 2009, effective Nov. 15, 2009).

petitioners could liquidate assets or business interests permitting payment in full in less time than the 4-1/2-year period petitioners proposed.[9]  In the light of these facts, while the Court might have reached a different conclusion we cannot say that there was an abuse of discretion by the settlement officer or respondent's Appeals Office in rejecting petitioners' request for an installment agreement.

IV.  Offer-in-Compromise

Petitioners, in their written Form 12153 indicated a desire for an offer-in-compromise, but they never submitted the required Form 656, Offer in Compromise, and supporting documents to respondent.  Petitioners did not actively pursue this option at their Appeals hearing.  They attribute that failure to the alleged premature issuance of the determination letter.  Petitioners' briefs in this case likewise do not specifically address the offer-in-compromise collection alternative.  The record does not indicate that, given these facts, respondent has abused his discretion in not accepting an offer-in-compromise from petitioners.  See generally sec. 7122(a); sec. 301.7122-1, Proced. & Admin. Regs.  In any event, we deem petitioners to have

---

[9]We note that the installment agreement was proposed in the fall of 2007.  Thus, petitioners have already enjoyed de facto 3 years of its proposed 4-1/2-year term; and if the proposed payment terms had been complied with, the outstanding balance would, today, be materially reduced.

abandoned this issue in view of their failure to specifically address it at trial or on brief.

V.  <u>Intrusiveness of Proposed Collection Action</u>

In rendering a determination with respect to a proposed collection action an Appeals officer must consider issues raised by the taxpayer, verify that the requirements of applicable law and administrative procedures have been met, and consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person [involved] that any collection action be no more intrusive than necessary."  Sec. 6330(c)(3).

Settlement Officer Freitag determined that "the proposed collection action balances the need for efficient collection with the taxpayer's concern than any collection action be no more intrusive than necessary."  Petitioners argue that the settlement officer abused his discretion by "sustaining the levy action against Petitioners", adding that "The most intrusive action the Service can take against a taxpayer is enforced collection."

Petitioners are mistaken.  The collection action sustained by the settlement officer was the filing of a notice of Federal tax lien, not a levy against petitioners' property.[10]

_____

[10]We note there is an important distinction between a lien and a levy.  A lien "is merely a security interest and does not involve the immediate seizure of property.  A lien enables the taxpayer to maintain possession of protected property while

(continued...)

Petitioners have not explained why respondent's filing of a notice of Federal tax lien was overly intrusive and have not made specific arguments why respondent should withdraw the notice of Federal tax lien.[11]  In light of the record before us, respondent did not abuse his discretion by sustaining the notice of Federal tax lien.

The Court has considered all of petitioners' contentions, arguments, requests, and statements.  To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[10](...continued)
allowing the government to preserve its claim should the status of property later change."  <u>United States v. Barbier</u>, 896 F.2d 377, 379 (9th Cir. 1990).

[11]Even if we had held that respondent abused his discretion by rejecting petitioners' proposed installment agreement, it would not have followed that respondent must withdraw the notice of Federal tax lien.  Sec. 6323(j)(1) is discretionary.  As noted earlier above, the Commissioner "may" but is not required to withdraw a Federal tax lien after an installment agreement has become effective and may require a lien as a condition of an installment agreement.  See <u>Crisan v. Commissioner</u>, T.C. Memo. 2007-67.