T.C. Memo. 2011-134

UNITED STATES TAX COURT

OSCAR C. AND ARANKA M. HAWAII, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12718-08L.                    Filed June 15, 2011.

Alvaro G. Velez, for petitioners.

Louis H. Hill, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, Judge:  The petition in this case was filed in
response to a Notice of Determination Concerning Collection

Action(s) Under Section 6320 and/or 6330 (notice of determination) for petitioners' taxable year 2005.[1]

On September 3, 2007, respondent sent petitioners separate Letters 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, regarding their unpaid income tax liability for 2005.  In response, petitioners timely mailed a Form 12153, Request for a Collection Due Process or Equivalent Hearing, in which they sought an in-person hearing.  At their hearing with the Internal Revenue Service's (IRS) Appeals Office, petitioners submitted a Form 1040X, Amended U.S. Individual Income Tax Return, that indicated that their total tax should be reduced to $10,612 from the $56,486 reported on their original return.[2]  On the basis of the information in the amended return, petitioners requested a streamlined installment agreement on the adjusted balance due.  In their amended return petitioners claimed that they are entitled to a theft loss deduction for the taxable year 2005.  Petitioners contended that this deduction would reduce their tax liability below $25,000, which would allow them to qualify for a streamlined installment agreement.

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Petitioners' original 2005 Federal income tax return is not part of the record before the Court.  All figures used are based on petitioners' amended return for 2005.

The Appeals officer did not agree with petitioners' claim that their 2005 tax liability should be reduced. On April 22, 2008, respondent sent to petitioners a notice of determination sustaining the proposed levy action. The notice of determination indicated that respondent rejected petitioners' request for a streamlined installment agreement because respondent had determined that petitioners' balance due exceeded the $25,000 limit for that payment option. Petitioners never received a notice of deficiency, nor did they have a prior administrative or judicial opportunity to challenge the amount of the deficiency, and respondent has acknowledged that the underlying liability is properly at issue. See sec. 6330(c)(2)(B); Montgomery v. Commissioner, 122 T.C. 1, 8 (2004).

The issues for decision are: (1) Whether petitioners incurred a theft loss of $100,000, and (2) whether respondent abused his discretion by not accepting petitioners' request for an installment agreement.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference.

At the time the petition was filed, petitioners resided in Ohio.

During 2005 Oscar C. Hawaii (petitioner) owned and operated a small trucking business. By early 2005 petitioner, who was then over 70, had accumulated retirement savings of approximately $300,000, which he kept in an individual retirement account with Charles Schwab.[3]

In January 2005 petitioner was approached about making an investment in ProCore Group, Inc. (ProCore),[4] by Carol Popp, who was one of ProCore's primary shareholders. Mr. Popp and petitioner attended the same church, and it was there that Mr. Popp initially spoke with petitioner about investing with ProCore. Petitioner told Mr. Popp that he could not invest in ProCore because his money was tied up in his retirement account. Petitioner also told Mr. Popp that he was not knowledgeable about investments and that Charles Schwab handled his investments. Mr. Popp assured petitioner that an investment in ProCore would be advantageous.

Mr. Popp invited petitioner to attend a meeting with some of the other officers and shareholders of ProCore so that they could further discuss investment opportunities with him. At the meeting petitioner was introduced to George Csatary, ProCore's chief financial officer. Petitioner was informed that Mr.

---

[3]At the time of trial, petitioner no longer received income from the trucking business.

[4]ProCore Group, Inc. was at all relevant times a California corporation licensed to do business in the State of Florida.

Csatary was a certified public accountant.  Messrs. Popp and Csatary convinced petitioner that ProCore was an exceptional investment that would allow him to make considerable short-term profits.  Petitioner was neither given a prospectus nor shown any of ProCore's financial documents or Securities and Exchange Commission (SEC) filings.  Petitioner decided to invest $100,000 of his retirement savings in ProCore.  Petitioner made the investment because he trusted Mr. Popp, since they attended church together.

On January 24, 2005, Mr. Csatary arranged for a wire transfer of $100,000 from petitioner's retirement account to ProCore.  Petitioner told Messrs. Popp and Csatary that he needed to receive either stock certificates or a return of his funds within 60 days in order to avoid paying tax on the withdrawal from his retirement account.

By mid-March 2005 petitioner had not received either the return of his funds or stock certificates.  Petitioner became increasingly concerned that his investment was in jeopardy.  This prompted petitioner to hire an attorney to help him recover the money he had invested.  On March 17, 2005, petitioner, through his attorney, sent ProCore a letter demanding the return of his investment.  In response to petitioner's demand letter, ProCore presented petitioner with stock certificates for 3,333,333 restricted and unregistered shares in the company.  Petitioner

was told that the shares had been delivered to him at a price established in a private placement memorandum previously registered with the SEC. After receiving the stock certificates, petitioner gave them to Charles Schwab. Charles Schwab has never informed petitioner, or led him to believe, that the ProCore stock certificates were fraudulent or otherwise defective.

In May 2005 petitioners' attorney was instructed to file suit against various individuals involved with ProCore in an effort to recover petitioners' money. Petitioners paid the attorney $7,500 in exchange for his representation. The attorney sent a letter to ProCore dated May 26, 2005, demanding that petitioners' funds be returned to them. The attorney also drafted a complaint alleging that ProCore and its officers had committed securities fraud and negligence and breached their fiduciary duties. The complaint was never filed.

At a later date during 2005 petitioner invested an additional $150,000 in Luhan Investment Securities, which was another venture promoted by some of the individuals behind ProCore. The outcome of this later investment is not evident from the record. Petitioner did not contend that this later investment resulted in any additional deductible losses during 2005.

In 2008 petitioner filed a complaint with the Ohio Department of Commerce's Division of Securities requesting that

ProCore's officers be investigated and criminally prosecuted for defrauding him. The Division of Securities declined to pursue petitioner's complaint.

In 2009 petitioner hired and paid $15,000 to another attorney to file suit in Ohio against ProCore's officers and its successor entity. On March 10, 2009, a complaint was filed in the U.S. District Court for the Northern District of Ohio against the surviving entity of ProCore--Universal Property and Development Acquisition Corp.--as well as other named defendants alleging that petitioners were the victims of securities fraud, breaches of fiduciary duties, negligence, fraud, and breach of contract. After the filing of the 2009 complaint, petitioner's counsel informed him that most of the claims in the complaint were barred by the statute of limitations in Ohio and that he was uncertain as to whether petitioner's money could be retrieved even if his case was favorably adjudicated.

OPINION

Section 6330(a)(1) provides that no levy may be made on any property or right to property of any person unless the Secretary has notified the person in writing of his or her right to a hearing under this section before the levy is made. The notice must include in simple and nontechnical terms, inter alia, the right of the person to request a hearing to be held by the IRS Office of Appeals. See sec. 6330(a)(3)(B).

At the hearing the person may raise any relevant issue relating to the unpaid tax or the proposed levy, including appropriate spousal defenses, challenges to the appropriateness of collection actions, and offers of collection alternatives. Sec. 6330(c)(2)(A). Section 6330(c)(2)(B) further provides that the person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for the tax liability or did not otherwise have an opportunity to dispute the tax liability. Where the validity of the underlying tax liability is at issue in a collection review proceeding, the Court will review that issue de novo. Thornberry v. Commissioner, 136 T.C. __, __ (2011) (slip op. at 12); Davis v. Commissioner, 115 T.C. 35, 39 (2000). However, we generally review other issues regarding the collection action determined by the Appeals Office for abuse of discretion. Thornberry v. Commissioner, supra at __ (slip op. at 12); Goza v. Commissioner, 114 T.C. 176 (2000). Section 6330(d)(1) confers jurisdiction on the Tax Court to review the determination of the Appeals officer.

It is uncontested that the merits of the underlying income tax liability are properly at issue. Therefore, we must first decide petitioners' claim that they are entitled to a loss deduction of $100,000.

Section 165(a) permits a deduction against ordinary income for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." For individuals, the deduction is limited to: (1) Losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit though not connected to a trade or business; or (3) losses of property not connected with a trade or business or a transaction entered into for profit, if such losses arise from "fire, storm, shipwreck, or other casualty, or from theft." (Emphasis added.) See sec. 165(c); Lockett v. Commissioner, T.C. Memo. 2008-5, affd. 306 Fed. Appx. 464 (11th Cir. 2009). A taxpayer may deduct a theft loss in the year the loss is sustained. Sec. 165(a). Generally, a theft loss is treated as sustained during the taxable year in which the taxpayer discovers it. Sec. 165(a), (e). However, even after a theft loss is discovered, if a claim for reimbursement exists during the year of the loss with respect to which there is a reasonable prospect of recovery, then a theft loss is treated as "sustained" only when it can be ascertained with reasonable certainty whether such reimbursement for the loss will be obtained. Jeppsen v. Commissioner, 128 F.3d 1410, 1414 (10th Cir. 1997), affg. T.C. Memo. 1995-342; Secs. 1.165-1(d)(2)(i), (3), 1.165-8(a)(2), Income Tax Regs. Stated differently, a reasonable prospect of recovery will postpone the theft loss deduction until such time

as the prospect no longer exists.  Petitioners have the burden of proving they have sustained a theft loss.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).

I.  Theft

The term "theft" under section 165 is a word of general and broad meaning that includes any criminal appropriation of another's property, including theft by swindling, false pretenses, and other forms of guile.  Edwards v. Bromberg, 232 F.2d 107, 110 (5th Cir. 1956); sec. 1.165-8(d), Income Tax Regs. The exact nature of a theft, whether it be larceny, embezzlement, obtaining money by false pretenses, or other wrongful misappropriation of property of another, is of little importance provided it constitutes a theft.  See Edwards v. Bromberg, supra; Grothues v. Commissioner, T.C. Memo. 2002-287; see also sec. 1.165-8(d), Income Tax Regs.  Whether a theft loss has been established depends upon the law of the State where the alleged theft occurred.  Bellis v. Commissioner, 540 F.2d 448, 449 (9th Cir. 1976), affg. 61 T.C. 354 (1973); Luman v. Commissioner, 79 T.C. 846, 860 (1982); Paine v. Commissioner, 63 T.C. 736, 740 (1975), affd. without published opinion 523 F.2d 1053 (5th Cir. 1975).  A criminal conviction is not necessary in order for a taxpayer to demonstrate a theft loss.  See Monteleone v. Commissioner, 34 T.C. 688, 692-694 (1960).  Instead, a taxpayer must prove a theft occurred under applicable State law by only a

preponderance of the evidence and not beyond a reasonable doubt. See Allen v. Commissioner, 16 T.C. 163, 166 (1951) ("If the reasonable inferences from the evidence point to theft, the proponent is entitled to prevail.  If the contrary be true and reasonable inferences point to another conclusion, the proponent must fail.").

Petitioners resided in Ohio when the transaction at issue occurred, and the solicitation of petitioner's investment was initiated within Ohio.  Therefore, we will decide whether the evidence presented allows for us to reasonably infer that a theft occurred under Ohio law.  Ohio Rev. Code Ann. sec. 2913.02 (LexisNexis 2010) provides:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
> (1) Without the consent of the owner or person authorized to give consent;
> (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
> (3) By deception;
> (4) By threat;
> (5) By intimidation.
> (B)(1) Whoever violates this section is guilty of theft.

From the evidence and testimony before us, we are unable to conclude that the transaction in issue resulted in a theft. Petitioners have failed to satisfy their burden of proving that the transaction was a theft rather than merely a poor investment decision.

At trial petitioner implied throughout his testimony that his investment was stolen but provided no specific evidence in support of that conclusion. The record indicates that petitioners made a $100,000 payment for an investment in ProCore, in exchange for which they received 3,333,333 shares of stock in the company.[5] There is no evidence that the 3,333,333 shares of stock ProCore issued are not valid and legitimate shares of stock. Petitioner testified that the shares had been accepted by Charles Schwab and that he was never notified that the shares were in any way irregular or deficient.

Petitioners provided no evidence, other than petitioner's testimony, to establish that the 3,333,333 shares of ProCore stock were valueless in 2005 or that they ever became valueless. In fact, in 2009 petitioner paid an attorney $15,000 to file suit against ProCore's successor and other individuals in an attempt to recover their investment.[6]

In sum, the record before us is insufficient to determine that petitioners were the victims of theft. As a result, we hold

---

[5]Petitioner testified that after his investment in ProCore, at some later point during 2005, he decided to invest an additional $150,000 in Luhan Investment Securities, another venture backed by the same individuals who had introduced him to ProCore.

[6]Paying an attorney $15,000 in 2009 to institute a lawsuit to recover his investment raises an inference that petitioner believed as recently as 2009 that there was a reasonable prospect of recovery.

that petitioners have failed to meet their burden of proving that a theft occurred during 2005.

## II. Installment Agreement

We review respondent's Appeals Office determination with respect to collection alternatives for abuse of discretion. See McCall v. Commissioner, T.C. Memo. 2009-75. In reviewing for abuse of discretion, we do not conduct an independent review of whether any collection alternative proposed by a taxpayer was acceptable or substitute our judgment for that of the Appeals Office. Id. Rather, we must uphold the Appeals Office determination unless it is arbitrary, capricious, or without sound basis in fact or law. See id.; see also Murphy v. Commissioner, 125 T.C. 301, 320 (2005), affd. 469 F.3d 27 (1st Cir. 2006). In making a determination following a collection due process hearing, the Appeals officer must consider: (1) Whether the requirements of any applicable law or administrative procedure have been met; (2) any relevant issues raised by the taxpayer; and (3) whether the proposed collection action balances the need for efficient collection with legitimate concerns that the collection action be no more intrusive than necessary. Sec. 6330(c)(3). The Appeals officer considered those factors, and there is no evidence to indicate that he abused his discretion in making his determination.

During their face-to-face conference with the Appeals officer, petitioners requested that they be granted a streamlined installment agreement to satisfy the balance due on their account. Respondent denied petitioners' request because their liability exceeded $25,000.

Section 6159(a) authorizes the Secretary to enter into written agreements with any taxpayer under which the taxpayer is allowed to make payment on any tax in installment payments if the Secretary determines that an agreement will facilitate full or partial collection of the liability. The Commissioner has the discretion to accept or reject an installment agreement proposed by a taxpayer. See sec. 301.6159-1(b)(1)(i), Proced. & Admin. Regs. A streamlined installment agreement is an installment agreement that may be processed quickly and without financial analysis or managerial approval and is available for taxpayers whose aggregate unpaid balance of assessments is $25,000 or less. Internal Revenue Manual (IRM) pt. 5.14.5.1(1) (Mar. 30, 2002); IRM pt. 5.14.5.2(1) (July 12, 2005). Because petitioners' outstanding liability exceeded $25,000, they were not eligible to enter into a streamlined installment agreement. See Shaw v. Commissioner, T.C. Memo. 2010-210; McCall v. Commissioner, supra; see also IRM pt. 5.14.1.2(4), 5.14.5.2(1) (Sept. 26, 2008). Respondent's Appeals Office verified that "the requirements of any applicable law or administrative procedure have been met" as

required by section 6330(c)(1) and balanced the need for the efficient collection of taxes with petitioners' concern that the collection action be no more intrusive than necessary as required by section 6330(c)(3)(C).  Therefore, we have no basis upon which to find that respondent abused his discretion in rejecting petitioners' request for a streamlined installment agreement.

    To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.