# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 19, 2011

No. 10-40485

Lyle W. Cayce
Clerk

MICHAEL J. CONWAY,

Plaintiff – Appellant

v.

UNITED STATES OF AMERICA,

Defendant – Appellee

Appeal from the United States District Court
for the Eastern District of Texas

Before JOLLY, HAYNES, and GRAVES, Circuit Judges.

HAYNES, Circuit Judge:

Michael Conway ("Conway") appeals from the district court's summary judgment determination that, pursuant to 26 U.S.C. § 6672, he is personally liable for excise taxes that National Airlines ("National") collected from its passengers but failed to pay over to the United States during his tenure as National's CEO. Because we hold that the district court properly found that Conway was a "responsible person"[1] and that his failure to pay taxes was willful,

---

[1] The courts have adopted the phrase "responsible person" to signify a person whose position in a company makes him responsible for the collection, accounting, or payment of trust-fund taxes. *See* 26 U.S.C. § 6672; *Slodov v. United States*, 436 U.S. 238, 245-46 & n.7 (1978).

No. 10-40485

as defined by this circuit's precedents, we AFFIRM the judgment of the district court.

## I. Background

Conway founded National in April 1995. From National's inception until its Chapter 7 bankruptcy in May 2003, Conway served as National's CEO, president, and chairman of the board. As an airline, National was required to collect a transportation excise tax from its passengers and pay over the collected taxes to the Government at regular intervals. *See* 26 U.S.C. § 4261. These taxes were assessed against and paid by National's passengers; National held these taxes in trust for the Government. *See Begier v. IRS*, 496 U.S. 53, 55 (1990).

National struggled as a business and never reported a profit for an entire year. In the third quarter of 2000, Conway and the other directors of National began to discuss the possibility of declaring bankruptcy. On Thursday, November 30, 2000, National sent its quarterly excise tax return to the IRS with a check for $1,832,501.01 to pay those taxes. The IRS received and deposited the check on December 4, 2000. However, National filed for Chapter 11 bankruptcy on December 6, 2000, and, on the advice of counsel, closed its bank accounts to establish new accounts for reorganization. The accounts were closed before the check to the IRS had been debited, and payment to the IRS was refused.[2] In the period immediately following the bankruptcy filing, National made no efforts to pay the excise taxes.

During bankruptcy, National regularly made bi-weekly payments of the excise taxes it collected in the ordinary course of business. However, the terrorist attacks of September 11, 2001, had a dramatic effect on the aviation industry. In response to that problem, Congress passed the Air Transportation Safety & System Stabilization Act, Pub. L. No. 107-42, 115 Stat. 230 (2001)

---

[2] The unpaid taxes for the third quarter of 2000 will hereinafter be referred to as the "pre-petition taxes."

No. 10-40485

("Stabilization Act" or "Act"). One provision of the Act allowed airlines to defer paying over the collected excise taxes until November 15, 2001. 49 U.S.C. § 40101. Pursuant to authority granted under the Stabilization Act, the IRS extended the deferral to January 15, 2002. IRS Notice 2001-77, 2001-2 C.B. 576; 2001 IRB LEXIS 424. Many airlines also received direct infusions of money under the Stabilization Act, including National, which received approximately $21 million from the Government. On January 15, 2002, when the taxes for the third quarter of 2001 became due, National filed an excise tax return, but did not pay over the collected taxes, instead requesting a six-month extension for payment. Similarly, on January 30, 2002, National sent in a tax return for the fourth quarter of 2001 without payment.[3]

On November 6, 2002, National shut down all operations, and on May 7, 2003, National's bankruptcy was converted to Chapter 7. Between May 2001 and its November 6, 2002 shutdown, National had receipts and outlays of approximately $430 million.

On January 29, 2003, the IRS made a request for payment of the unpaid excise taxes in the amount of $11,572,151.91. On March 14, 2003, the Government sent Conway notice that it intended to seek to recover the unpaid excise taxes from him personally. The Government made quick assessments against Conway in the amounts of $148,325.00, $3,497,448.32, and $4,803,626.85. On June 2, 2006, Conway made small payments towards the excise taxes for each of the deficient quarters and filed for a refund of those amounts. The refund was denied.

Conway filed suit in district court seeking a refund of the amounts paid and an abatement of the amounts owing. The Government filed an answer and counterclaim for the amount owing followed by a motion for summary judgment

---

[3] Hereinafter, National's unpaid excise taxes for the third and fourth quarters of 2001 are referred to as the "post-petition taxes."

3

No. 10-40485

on Conway's liability for the unpaid excise taxes under § 6672. The district court granted the motion and entered judgment for the Government in the amount of $8,449,358.93 plus interest.  Conway timely appealed.

## II. Discussion

### A. Standard of Review

This court reviews the district court's grant of summary judgment de novo. *Staff IT, Inc. v. United States*, 482 F.3d 792, 797 (5th Cir. 2007).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Id.* at 797-98.

The district court found that Conway was liable for National's tax deficiency under 26 U.S.C. § 6672(a), which provides:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

Liability under § 6672 thus is composed of two elements: (1) that the taxpayer was a "responsible person," and (2) that the taxpayer willfully failed to collect, account for, or pay over such taxes.  *See Mazo v. United States*, 591 F.2d 1151, 1153 (5th Cir. 1979).  On appeal, Conway contests both that he was a responsible person and that he willfully failed to account for or pay over the excise taxes for both periods at issue.

### B. Conway was a Responsible Person[4]

#### 1. Pre-Petition

Conway first claims that he was not a responsible person under § 6672. The Supreme Court has clarified that a "responsible person" is not limited to

---

[4] Conway appears to have conceded this issue during oral argument.   In the interests of justice and because it was fully briefed, we address the argument briefly.

No. 10-40485

persons "in a position to perform all three of the enumerated duties with respect to the tax dollars in question." *Slodov*, 436 U.S. at 250. Moreover, "[t]his circuit takes a broad view of who is a responsible person under § 6672." *Logal v. United States*, 195 F.3d 229, 232 (5th Cir. 1999). We have enumerated six factors to consider in determining whether someone is a responsible person under the statute:

> whether such a person: (i) is an officer or member of the board of directors; (ii) owns a substantial amount of stock in the company; (iii) manages the day-to-day operations of the business; (iv) has the authority to hire or fire employees; (v) makes decisions as to the disbursement of funds and payment of creditors; and (vi) possesses the authority to sign company checks.

*Barnett v. IRS*, 988 F.2d 1449, 1455 (5th Cir. 1993). Each of these factors weighs in favor of finding that Conway was a responsible person for the taxes at issue. The undisputed record shows that Conway was the founder, CEO, president, and chairman of the board of National during the periods in question; he was one of the largest individual stockholders; and he had the most individual authority, including the authority to hire and fire employees and to determine which creditors would get paid. Conway was also authorized to sign checks on each of National's company accounts. No reasonable jury could find that Conway was not a responsible person before National's bankruptcy, so Conway was a responsible person with regard to the pre-petition taxes. Thus, he had an obligation to make sure were collected, paid over and accounted for by November 30, 2000, which was prior to National's December 6 bankruptcy. *See Mazo*, 591 F.2d at 1154 ("[T]he liability of responsible persons generally is not limited to restoring actual cash diverted from the trust; it encompasses the duty to have initially or to collect funds to pay withholding taxes."); *Newsome v. United States*, 431 F.2d 742, 745 (5th Cir. 1970) ("[L]iability under section 6672 can also be premised upon use of withheld funds for other corporate purposes *before* the date for the corporation to pay over the funds."(emphasis added)).

5

No. 10-40485

### 2. During Bankruptcy

Furthermore, bankruptcy did not change Conway's status as a responsible person with regard to the post-petition taxes. Notably, Conway acknowledges that during the bankruptcy, National continued to pay over the majority of its excise taxes without needing approval of the bankruptcy court and concedes that those excise taxes were paid in the normal course of business.[5] We conclude that the district court did not err in finding that Conway was a "responsible person" under § 6672 for all periods at issue.

### C. Conway Acted Willfully

#### 1. The Nature of Reasonable Cause

Conway also disputes that his failure to pay over the taxes was willful. A responsible person acts willfully if "he knows the taxes are due but uses corporate funds to pay other creditors" or "he recklessly disregards the risk that the taxes may not be remitted to the government." *Logal*, 195 F.3d at 232. When a responsible person becomes aware of tax liability, he has "a duty to ensure that the taxes [are] paid before any payments [are] made to other creditors." *Barnett*, 988 F.2d at 1457. Where there is undisputed evidence that

---

[5] Conway's argument that the Stabilization Act converted the post-petition taxes into something beyond "ordinary course" falls short on numerous levels. Conway has provided no support for his argument that the deferral of the payment of excise taxes rendered their eventual payment outside the course of ordinary business. Indeed, at the time of National's Chapter 11 proceedings, the bankruptcy court's local rules provided that "[d]ebtors operating businesses in cases under Chapters 7, 11, or 13 shall pay all taxes, fees, and other required payments to governmental entities on a timely basis, except where otherwise ordered for good cause shown." Bankr. D. Nev. R. 960, subsequently amended, Bankr. D. Nev. R. 1015 (2009). Even assuming arguendo that the payments did require approval of the bankruptcy court, this requirement alone would not strip Conway of his responsible person status. *See Neckles v. United States*, 579 F.2d 938, 940 (5th Cir. 1978) ("Although the appellant may not always have had the 'final' say about paying creditors, in the apocalyptic sense of that word, he did have significant control over disbursements."); *Barnett*, 988 F.2d at 1455 ("[Section 6672] expressly applies to 'any' responsible persons, not just to the person *most* responsible for the payment of the taxes."). At a minimum, Conway had the authority and duty to seek approval from the bankruptcy court for payment of the post-petition taxes, a step that he has not shown that he ever pursued. *See Gustin*, 876 F.2d at 492.

6

the responsible person directed payments to other creditors while knowing of the tax deficiency, willfulness is established as a matter of law. *Id*.; *see also Howard v. United States*, 711 F.2d 729, 736 (5th Cir. 1983) ("A considered decision not to fulfill one's obligation to pay the taxes owed, evidenced by payments made to other creditors in the knowledge that the taxes are due, is all that is required to establish willfulness."). However, evidence that the taxpayer acted with reasonable cause can sometimes defeat a finding of willfulness. *See Howard*, 711 F.2d at 736 ("The failure to remit taxes under section 6672(a) is not willful if the taxpayer can produce a 'reasonable cause' for this failure."); *Newsome*, 431 F.2d at 746. "[T]o further the basic purposes of section 6672, reasonable cause should have a very limited application." *Newsome*, 431 F.2d at 747 (internal citations omitted); *see also Logal*, 195 F.3d at 233 ("'[A]lthough we have recognized conceptually that a reasonable cause may militate against a finding of willfulness, no taxpayer has yet carried that pail up the hill.'" (internal citation omitted)).

Conway knew no later than January 19, 2001, when National filed a bankruptcy schedule reflecting the unpaid taxes, that the pre-petition excise taxes had not been paid. As to the post-petition taxes, Conway knew that they had not been paid no later than January 15, 2002, when he signed a request for an extension of time to pay over the taxes. National Airlines made payments in excess of $220 million to creditors between February 2002 and November 2002, far more than the approximately $8 million in unpaid excise taxes at issue in this case. Thus, in the absence of reasonable cause, Conway's willfulness is established as a matter of law, and summary judgment on the issue is proper.

Conway raises several arguments to establish reasonable cause for his failure to pay over the taxes. He argues that: (1) he relied on the advice of counsel not to pay over the taxes, and thus had reasonable cause; (2) the Stabilization Act justified National's post-petition failure to pay even past the

No. 10-40485

deadline set by the Act; (3) National lacked the unencumbered funds to pay the taxes; and (4) he believed that National had fully paid the excise taxes and otherwise lacked intent to avoid paying over the taxes. Conway also argues that the district court conflated National's tax liability with his personal liability for the taxes. For the reasons discussed below, these arguments are not persuasive.

### 2. Reliance on Counsel[6]

Conway's primary argument on appeal is that his failure to pay over the taxes was based on reliance on the advice of counsel, and thus he had reasonable cause. The advice of counsel may constitute reasonable cause under some circumstances. *Compare Newsome*, 431 F.2d at 748 n.12 ("The term 'reasonable cause' has been interpreted as advice by counsel under certain circumstances not to pay the withheld taxes as they became due, advice of non-collection by attorney and tax collector, [and] advice by counsel that there was no tax liability." (internal citations omitted)) *with Logal*, 195 F.3d at 233 ("No [reasonable cause] defense may be asserted by a responsible person who knew that the withholding taxes were due, but who made a conscious decision to use corporate funds to pay creditors other than the government."). However, cases in which the taxpayer's reliance on the advice of counsel was found to have provided reasonable cause have been cases in which the advice of counsel tended to negate an element of willfulness under section 6672. *See Gray Line Co. v. Granquist*, 237 F.2d 390, 395 (9th Cir. 1956) (noting that taxpayer relied upon advice from counsel that no taxes were owed); *Anderson v. United States*, No. 19303, 1977 U.S. Dist. LEXIS 13860, at *7-10 (W.D. La. Sept. 22, 1977) (noting that the taxpayer relied on the advice of counsel to structure bankruptcy estate to prefer the Government to other creditors).

---

[6] The parties dispute whether National's reliance on counsel was properly presented at the administrative hearings and thus whether the issue was waived under the variance doctrine. Because we hold that Conway has failed to establish a genuine issue of material fact as to his reliance on the advice of counsel, we do not reach the issue of variance.

No. 10-40485

Conway has not raised a material fact issue supporting a finding that his reliance on counsel's advice provided reasonable cause so as to negate willfulness. Regarding National's pre-petition taxes, the only advice of counsel found in the record is Chief Financial Officer Ray Nakano's statement that National's bankruptcy counsel advised National to close its then current bank accounts and open new ones as a debtor in possession. As a result of National's following of this advice, the checks sent to the IRS were not paid (though there is no indication counsel knew of this consequence). Such advice is not the equivalent of advice that the taxes were not owed, and thus does not constitute reasonable cause for purposes of § 6672. *See Newsome*, 431 F.2d at 747-48 ("[The taxpayer] was not advised, nor did he interpret the advice as meaning, that he had been justified in using withheld taxes during December and January to pay other creditors or that he should continue to pay creditors with funds then available . . . instead of paying the government."). Therefore, Conway has failed to put forward any evidence that National relied on counsel's advice so as to have reasonable cause for its failure to pay the pre-petition taxes.

Similarly, there is no evidence in the record that National's failure to pay its post-petition taxes was due to reliance on the advice of counsel. Conway's reference to a few vague and conclusory statements of reliance in the record falls far short of pointing to specific substantive evidence that would support a conclusion that the taxes were not owed. While there is some evidence that counsel told management what debts to pay, no evidence suggests that counsel advised that preferring other creditors would not subject National's officers to personal liability for the excise taxes. *See Newsome*, 431 F.2d at 748 (holding that an attorney's advice to execute a chattel mortgage in favor of the taxpayer's bank did not provide reasonable cause where "the attorney did not advise [the taxpayer] that he could prefer the bank over the United States without

9

subjecting himself to section 6672 liability"). Nor is there evidence of any specific attorney stating that excise taxes were simply not owed.

At best for Conway, the advice of counsel argument requires that the responsible person actually and reasonably rely on advice that is actually given. *Cf. United States v. Boyle*, 469 U.S. 241, 252 (1985) ("The failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not 'reasonable cause' for a late filing under § 6651(a)(1)."). In light of the undisputed evidence that Conway knew the taxes were due and continued to favor other creditors, as well as our precedents establishing the exceedingly limited nature of the "reliance on counsel as reasonable cause" defense, we hold that Conway has failed to put forward evidence of his reliance on the advice of counsel such as would establish reasonable cause under § 6672.

### 3. Stabilization Act

Conway argues that even if personal liability would normally attach under these circumstances, the court should find that this case is extraordinary because of the September 11 terrorist attacks and the subsequent Stabilization Act. Generally, it is not a defense to liability under § 6672 that payment of the collected taxes would threaten the continued existence of the business entity. *See Bowen*, 836 F.2d at 967 (stating that the taxpayers' use of the collected taxes for other corporate expenses "made the United States 'an unwilling joint venturer in the corporate enterprise'" (internal citations omitted)); *see also Mazo*, 591 F.2d at 1154 ("[I]f a corporation has only sufficient cash to pay net wages, and does so, there may literally be no funds to constitute the corpus of the trust, but the responsible persons are nevertheless liable for failure to collect the withholding taxes."). Conway argues, however, that the Stabilization Act authorized National to use the withheld taxes as working capital.

We disagree. Nothing in the plain language of the Act evinces an intent to allow the airlines to use the excise taxes as working capital. By the plain

terms of the Stabilization Act, its effect was to allow airlines to defer paying over the collected excise taxes until January 15, 2002, as authorized by the IRS. Because these taxes are collected from passengers, and were not intended to become the property of National, more than a mere statutory deferral of payment would be required to evince an intent to allow the collected taxes to be used for operational purposes. Because the plain language of the statute is unambiguous, we need not examine the legislative history.[7] Similarly, nothing in the act demonstrates congressional intent to render payment of the excise taxes beyond the ordinary course of business.

### 4. Other Arguments

Conway also argues that his failure to pay over the taxes was not willful because National lacked the unencumbered funds to pay the excise taxes after they became due and because he believed that payment for the taxes had successfully been arranged at the time that he left National.

Conway has the burden of raising a fact issue that would support a conclusion that the funds paid to other creditors were encumbered. *See Barnett*, 988 F.2d at 1458 ("We next observe that the burden to prove that the loan proceeds and accounts receivable deposited into the Company's bank accounts . . . were 'encumbered' falls on [the taxpayer.]"). In this circuit, funds are encumbered when "restrictions preclude a taxpayer from using the funds to pay the trust fund taxes." *Id*.; *see also Honey v. United States*, 963 F.2d 1083, 1090 (8th Cir. 1992) ("[F]unds are encumbered only where the taxpayer is legally obligated to use the funds for a purpose other than satisfying the preexisting

---

[7] *See Tidewater Inc. v. United States*, 565 F.3d 299, 303 (5th Cir. 2009). Furthermore, were we to consider the legislative history, it does not change our analysis. Conway points to a few sparse statements in the legislative history that the Stabilization Act was intended to financially benefit the airlines. It is probable that these statements refer to other provisions of the act which allowed for direct payments to the airlines, and under which National received $21 million.

employment tax liability and if that legal obligation is superior to the interest of the IRS in the funds."). However, as the district court found, Conway has submitted no evidence that the funds paid to other creditors had a legal priority over the unpaid excise taxes. Therefore, Conway has not met his burden of raising a fact issue on encumbrance.

Conway also argues that he did not act willfully in regard to the pre-petition taxes because, at the time he left National, he believed he had arranged for those taxes to be paid. Noting that corporate officers have a duty to ensure that payment is made, we have repeatedly rejected the argument that a taxpayer's good faith belief that payment for the taxes had been arranged is a defense to personal liability under § 6672. *See Mazo*, 591 F.2d at 1157; *see also Bowen*, 836 F.2d at 968 (finding that a taxpayer acted willfully despite the taxpayer's good faith belief that it would be able to obtain a loan to pay over the tax liabilities). While Conway may have had earnest intentions to pay back the taxes, willfulness does not require an intent "to defraud or to deprive the United States of taxes." *See Gefen v. United States*, 400 F.2d 476, 482 n.7 (5th Cir. 1968). As discussed above, it is sufficient that other creditors were consciously preferred to the United States. *Id.*

Finally, Conway's argument that the district court conflated National's tax liability with Conway's personal liability is frivolous in light of the district court's proper conclusion that Conway was a responsible person and that he willfully failed to pay over the taxes.[8]

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's summary judgment.

---

[8] For the first time in his reply brief, Conway asserted many new arguments, including the IRS's alleged failure to abide by its collection procedures. Arguments raised for the first time in a reply brief are forfeited. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993).