MICHAEL J. CONWAY, PETITIONER *v*. COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

RAYMOND T. NAKANO, PETITIONER *v*. COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket Nos. 23833–08L, 24600–08L. Filed December 19, 2011.

R assessed trust fund recovery penalties against Ps (P–C
and P–N). R did not issue Ps Forms 3552, Notice of Tax Due
on Federal Tax Return, within 60 days of the assessments. R
filed a notice of Federal tax lien (NFTL) on P–C's property. R
then issued a CDP lien notice to P–C and a CDP levy notice
to P–N. R issued Ps Forms 3552 after issuing the CDP
notices. Ps argue that R's determinations to proceed with
collection were an abuse of discretion because R had not com-
plied with the requirement of sec. 6303(a), I.R.C., that notice
and demand be given within 60 days of assessment. *Held*: The
CDP levy notice issued to P–N satisfies the requirements of
sec. 6303, I.R.C. *Held*, *further*, R's determination to proceed
with levy against P–N was not an abuse of discretion. *Held*,
*further*, the filing of the NFTL against P–C was premature.
*Held*, *further*, R's determination to sustain the NFTL filing
against P–C was an abuse of discretion.

*Tim A. Tarter*, for petitioners.
*Chris J. Sheldon*, for respondent.

OPINION

PARIS, *Judge*: Petitioner Michael J. Conway (Conway) and
petitioner Raymond T. Nakano (Nakano) petitioned the
Court to challenge the Internal Revenue Service Office of
Appeals' (IRS Appeals) determinations to sustain: (1) The
filing of a notice of Federal tax lien (NFTL) against Conway

209

and (2) a proposed levy against Nakano. See secs. 6321, 6330(c)(3), 6331(a).[1] Respondent filed the NFTL and proposed the levy to collect trust fund recovery penalties (TFRPs) assessed against petitioners for the taxable quarters ending September 30, 2000, September 30, 2001, and December 31, 2001 (the tax periods at issue). See sec. 6672(a). The Court has jurisdiction to review IRS Appeals determinations. Sec. 6330(d). On March 15, 2010, the parties filed a joint motion to consolidate for trial, briefing, and opinion, which the Court granted. These consolidated cases present one issue for decision: whether IRS Appeals abused its discretion in sustaining the NFTL filing and proposed levy.

## Background

The parties submitted these cases for decision fully stipulated. See Rule 122(a). The stipulation of facts filed March 18, 2010, and the attached exhibits are incorporated herein by this reference. When the petitions were filed, Conway resided in Texas, and Nakano resided in Arizona.

### I. *Transportation Excise Taxes for National Airlines, Inc.*

Conway founded and operated National Airlines, Inc. (National), which was based in Las Vegas, Nevada. Conway was National's chief executive officer (CEO), its president, and chairman of its board of directors during the tax periods at issue. Nakano was National's chief financial officer during the tax periods at issue. National began flying passengers in 1999, but by December 2000 it was under bankruptcy protection. National ceased operations at the end of 2001. When National stopped doing business, it had reported but unpaid transportation excise taxes[2] for the tax periods at issue of $1,832,501.01, $3,497,448.32, and $4,803,626.85, respectively.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect when the petition was filed; all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Sec. 9502 establishes the Airport and Airway Trust Fund, which consists in part of excise taxes on taxable transportation collected by airlines under sec. 4261. Airlines remit the excise taxes to the U.S. Treasury for the benefit of the Airport and Airway Trust Fund. See secs. 7501(a), 9502(b)(1)(B).

## II. *Trust Fund Recovery Penalties*

Respondent determined that petitioners were responsible for National's failure to pay the excise taxes. On March 14, 2003, respondent notified petitioners that he proposed to assess TFRPs against them. On May 9, 2003, petitioners filed protests of the proposed TFRP assessments with IRS Appeals. Almost 3 years later, on March 23, 2006, IRS Appeals notified petitioners that it had rejected their protests. Five days later, on March 28, 2006, TFRPs were assessed against petitioners. The notice of tax due, although dated March 28, 2006, was not issued until June 6, 2006. [3]

## III. *The Proposed Levy on Nakano's Property*

On May 22, 2006, respondent sent Nakano a Form 1058, Final Notice—Notice of Intent to Levy and Notice of Your Right to a Hearing (levy notice). The levy notice reflected respondent's intent to levy on Nakano's property and rights to property to collect the TFRPs assessed against him. The levy notice listed the type and amount of tax owed for each of the tax periods at issue. The levy notice also stated: "To prevent collection action, please send your full payment

[3] Petitioners each filed a refund suit in Federal District Court after respondent denied their refund claims submitted at the end of May 2006. *Conway v. United States*, No. 08–CV–201–MHS–DDB (E.D. Tex., filed June 4, 2008); *Nakano v. United States*, No. 08–CV–1026–ROS (D. Ariz., filed June 2, 2008). The District Courts each found the respective petitioner to be responsible for National's failure to pay the excise taxes, see sec. 6672, and entered summary judgment sustaining the respective petitioner's liability for the TFRPs and the assessments in connection therewith, *Conway v. United States*, 105 AFTR 2d 2010–1310, 2010–1 USTC par. 50,297 (E.D. Tex. 2010), affd. 647 F.3d 228 (5th Cir. 2011); *Nakano v. United States*, No. 08–CV–1026–ROS (D. Ariz., Nov. 2, 2011). In Conway's case, the Court of Appeals for the Fifth Circuit affirmed the District Court's judgment on July 19, 2011. *Conway v. United States*, 647 F.3d 228 (5th Cir. 2011).

While the refund suits were pending, respondent filed a collection action against petitioners in the U.S. District Court for the District of Nevada. *United States v. Nakano*, No. 2:08–CV–01340 (D. Nev., filed Oct. 6, 2008). Petitioners filed motions in their refund suits to enjoin the Nevada proceedings based on sec. 6331(i)(1)–(4), which provides in relevant part that "No proceeding in court for the collection of any unpaid [divisible] tax * * * shall be begun by the Secretary during the pendency of [any proceeding brought by such person in a proper Federal trial court for the recovery of any portion of such divisible tax]". The District Courts granted petitioners' motions.

Upon motions to reconsider, however, the District Courts lifted the injunctions on the basis of the distinction between divisible taxes, which are limited to taxes imposed under subtit. C, and airline excise taxes, which are imposed by subtit. D. *Nakano v. United States*, *supra* (order granting motion for reconsideration entered Nov. 12, 2009); *Conway v. United States*, *supra* (order granting motion for reconsideration entered Nov. 30, 2009). Therefore, sec. 6331(i) does not bar respondent's collection action in these cases. Cf. *Beard v. United States*, 99 Fed. Cl. 147 (2011) (applying sec. 6331(i) to bar the Government's collection action in District Court for the same employment taxes that were subject to plaintiff's refund suit in the U.S. Court of Federal Claims).

today." The levy notice informed Nakano of his right to a collection due process hearing (CDP hearing) with IRS Appeals before respondent carried out the levy. Fifteen days later, on June 6, 2006, respondent issued Nakano a Form 3552, Notice of Tax Due on Federal Tax Return, for each of the tax periods at issue (collectively, Nakano's Forms 3552). [4]

## IV. *The Federal Tax Lien Against Conway*

On May 18, 2006, respondent sent Conway a Letter 3164B. The letter stated that "We are attempting to collect unpaid taxes from you", but it did not state the amounts, types, or periods of the unpaid taxes.

On May 26, 2006, respondent filed an NFTL with the Clark County Recorder's Office in Nevada. The NFTL stated:

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Conway was the named taxpayer on the NFTL. On June 1, 2006, respondent issued Conway a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320. Five days later, on June 6, 2006, respondent issued Conway a Form 3552 for each tax period at issue (collectively, Conway's Forms 3552). [5]

## V. *The Collection Due Process Hearing*

Nakano and Conway timely requested CDP hearings on June 16 and July 3, 2006, respectively, to contest the proposed levy and NFTL filing. At the request of petitioners' counsel, they received a joint CDP hearing. In their CDP hearing requests, petitioners claimed the following: (1) The TFRP assessments were invalid and (2) respondent failed to

---

[4] Nakano's Forms 3552 were dated Mar. 28, 2006, which was contemporaneous with the assessment. The record does not reflect why they were not issued until June 6, 2006.

[5] Like Nakano's Forms 3552, Conway's Forms 3552 were dated Mar. 28, 2006. Also, as is the case with Nakano, the record does not reflect why Conway's Forms 3552 were not issued until June 6, 2006. See *supra* note 4. Although Forms 3552 were mailed to Conway on June 6, 2006, they were returned as undeliverable. The forms were subsequently remailed to Conway's counsel. The parties have agreed that the date of mailing of the Forms 3552 to Conway was June 6, 2006.

issue notice and demand for payment within 60 days of the assessments, thus precluding him from collecting the TFRP assessments via lien and levy.[6]

Petitioners' CDP hearing was originally assigned to Settlement Officer David Villaverde (SO Villaverde), who held a face-to-face hearing with petitioners' counsel. On the results of the CDP hearing, SO Villaverde determined that "some errors were found to have been made by the Service * * * [but] there were no fatal errors made." Specifically, SO Villaverde agreed that respondent did not issue notice and demand to petitioners within 60 days of the TFRP assessments. However, he believed that this failure did not prevent respondent from collecting the TFRP assessments via lien and levy. Rather, SO Villaverde determined that "the Service does have the collection tools available 10 days after the untimely notice was sent on June 6, 2006, which would be on or after June 16, 2006." On the basis of this determination, SO Villaverde thought withdrawing the NFTL filing and rescinding the levy notice were appropriate courses of action given that the NFTL was filed and the levy notice was issued before June 16, 2006.

Before SO Villaverde made final determinations in petitioners' CDP hearing, he was promoted to Appeals team manager. Petitioners' case was reassigned to Settlement Officer Veronica Hernandez (SO Hernandez). After reviewing the record and meeting with petitioners' counsel, SO Hernandez concluded that, while the untimely issuance of notice and demand did not invalidate the TFRP assessments, respondent should withdraw the NFTL filing and rescind the levy notice. The Appeals team manager, however, disagreed with SO Hernandez's conclusions and ultimately overruled her.[7] Thus, IRS Appeals ultimately determined that: (1) The TFRP assessments were valid and (2) failure to issue timely notice and demand did not invalidate the NFTL filing or the proposed levy. Petitioners timely petitioned the Court for review of the determinations. See sec. 6330(d).

---

[6] Petitioners also claimed in their CDP hearing requests that they were not responsible for National's failure to pay the excise taxes and thus were not liable for the TFRPs. During the actual CDP hearing, however, petitioners conceded that they were not entitled to challenge the underlying liabilities. Thus, petitioners' underlying liabilities are not at issue here but were the subject matter of U.S. District Court complaints. See *supra* note 3.

[7] The record does not reflect whether the Appeals team manager who overruled SO Hernandez was former SO Villaverde or another person.

*Discussion*

I. *Applicable Law*

A. *Trust Fund Recovery Penalty*

Section 6672(a) provides that any person required to withhold and pay over any tax who willfully fails to do so is liable for a TFRP. The Commissioner is authorized to impose a TFRP on any "officer or employee of a corporation, or a member or employee of a partnership who as such officer, employee, or member is under a duty to perform" the duties referred to in section 6672. Sec. 6671(b). The Commissioner must give the person on whom he intends to impose the TFRP notice of his intent before assessing the TFRP. Sec. 6672(b)(1). If the person timely protests the proposed assessment, the period for assessing the TFRP does not expire before "the date 30 days after the Secretary makes a final administrative determination with respect to such protest." Sec. 6672(b)(3)(B). If the person fails to protest or, after a timely protest, the Secretary makes a final determination, the Commissioner may assess the TFRP. A TFRP is assessed and collected in the same manner as tax. Sec. 6671(a).

B. *Notice and Demand for Payment*

Once the Commissioner assesses a TFRP against a person, he must give that person notice and demand for payment. Sec. 6303(a). The Commissioner must leave the notice at the person's dwelling or usual place of business or mail it to the person's last known address. *Id.* The statute requires that the Commissioner give the notice within 60 days of assessment. *Id.* The regulations under that section, however, provide that "the failure to give notice within 60 days does not invalidate the notice." See sec. 301.6303–1(a), Proced. & Admin. Regs.

C. *NFTL Filing*

If a person liable for a tax, including a TFRP, fails to pay it after demand, the unpaid amount, including any interest and additions to tax, becomes a lien in favor of the United States upon that person's property and rights to property. Sec. 6321. The Commissioner may then file an NFTL to protect the validity and priority of the lien against certain third

parties. Sec. 6323. Once the Commissioner files an NFTL, he must notify the person of the filing and of the person's right to a CDP hearing to appeal the filing. Secs. 6320(a) and (b), 6330(a).

### D. *Notice of Intent To Levy*

If a person liable to pay a tax, including a TFRP, does not pay it within 10 days after notice and demand, it becomes lawful for the Commissioner to levy on that person's property and rights to property to collect the unpaid amount, including interest and additions to tax. Sec. 6331(a). At least 30 days before carrying out the levy, however, the Commissioner must give notice to that person of the proposed levy and of the person's right to a CDP hearing to appeal the proposed levy. Secs. 6330(a), 6331(d).

### E. *The CDP Hearing*

If a person requests a CDP hearing to appeal an NFTL filing or a proposed levy, he receives one before IRS Appeals. Sec. 6330(b). During the CDP hearing, IRS Appeals must verify that all legal and procedural requirements have been met with respect to the NFTL filing and the proposed levy. Sec. 6330(c)(1). Specifically, IRS Appeals must verify, among other things, that the Commissioner properly issued the person notice and demand for payment. Sec. 6303(a); *Ron Lykins, Inc. v. Commissioner*, 133 T.C. 87, 96–97 (2009). Sustaining an NFTL filing or proposed levy without proper verification renders IRS Appeals' determination an abuse of discretion. *Freije v. Commissioner*, 125 T.C. 14, 36 (2005).

After conducting the CDP hearing, IRS Appeals determines whether to sustain the NFTL filing or proposed levy. Sec. 6330(c). The person may appeal an IRS Appeals determination to the Court. Sec. 6330(d). If the person appeals and his underlying liability for the tax (or TFRP) was not at issue during the CDP hearing, the Court reviews the IRS Appeals determination for abuse of discretion. *Lunsford v. Commissioner*, 117 T.C. 183, 185 (2001) (citing *Nicklaus v. Commissioner*, 117 T.C. 117, 120 (2001)). IRS Appeals abuses its discretion if it makes a determination that is "arbitrary, capricious, or without sound basis in fact or law." *Giamelli v. Commissioner*, 129 T.C. 107, 111 (2007) (citing *Woodral v.*

*Commissioner*, 112 T.C. 19, 23 (1999)). Petitioners conceded during the CDP hearing that they could not contest their underlying liability for the TFRPs.[8] Thus, the Court reviews IRS Appeals' determinations for abuse of discretion.

## II. *The Proposed Levy Against Nakano's Property*

Nakano contends that IRS Appeals failed to verify that the requirements of applicable law had been met. Specifically, he argues that respondent did not: (1) Properly assess the TFRPs against him or (2) give him notice and demand within 60 days of any assessment. Nakano ultimately claims that this failure rendered IRS Appeals' determination to proceed with the proposed levy an abuse of discretion.

### A. *Notice and Demand*

Respondent contends that he gave Nakano valid notice and demand when he issued Nakano the levy notice on May 22, 2006. The levy notice went beyond the typical notice of intent to levy by including a demand for immediate payment of the specific amounts of TFRP owed, listed by period at issue, within 60 days of the assessments. In this limited circumstance, the Court agrees that this levy notice constitutes notice and demand.

"'The form on which a notice of assessment and demand for payment is made is irrelevant as long as it provides the taxpayer with all of the information required under * * * [section 6303].'" *Hughes v. United States*, 953 F.2d 531, 536 (9th Cir. 1992) (quoting *Elias v. Connett*, 908 F.2d 521, 525 (9th Cir. 1990)); see also *Deputy v. Commissioner*, T.C. Memo. 2003–210. Section 6303 requires only that the notice (1) state the amount of unpaid tax, (2) demand payment, and (3) be issued within 60 days of assessment. The levy notice here did provide Nakano with all of the information required under the statute because it listed the type and amount of unpaid tax for each tax period, explicitly demanded payment, and was sent within 60 days of the assessments. The Court therefore holds that respondent gave Nakano the notice and demand required by section 6303.

---

[8] See *supra* note 6.

B. *Assessment*

Nakano also argues that the TFRP assessments are invalid because: (1) The assessments were untimely; (2) Nakano's Forms 4340, Certificate of Assessments, Payments, and Other Specified Matters, incorrectly characterized the assessments as jeopardy assessments rather than quick assessments; and (3) respondent did not timely issue notice and demand. The Court disagrees. While Nakano's notice of determination states that "It was believed to have been established that the assessment[s], although made late in error, * * * [were] still * * * valid [assessments]", the record contradicts this statement. Both the Forms 4340 and Nakano's Forms 3552 show that respondent assessed the TFRPs on March 28, 2006. Aside from the statement in the notice of determination, no evidence suggests that respondent did not timely assess the TFRPs. Also, Nakano has shown no prejudice, and, therefore, mislabeling the quick assessments as jeopardy assessments does not invalidate them. See *McCall v. Commissioner*, T.C. Memo. 2009–75. In addition, the Court has already rejected Nakano's argument that he did not receive timely notice and demand for payment. Thus, the Court holds that the TFRP assessments against Nakano are valid.

C. *Conclusion*

Respondent properly assessed the TFRPs against Nakano and issued him valid notice and demand for payment. Thus, IRS Appeals correctly verified that all legal and administrative requirements had been met. Therefore, IRS Appeals did not abuse its discretion when it sustained the proposed levy.

III. *The NFTL Filed on Conway's Property*

Like Nakano, Conway contends that IRS Appeals failed to verify that the requirements of applicable law had been met. Specifically, he argues that respondent did not give him notice and demand within 60 days of the assessment.[9] Respondent, however, contends that he issued Conway valid

---

[9] To be sure, Conway also argues that respondent improperly assessed the TFRPs against him. Because respondent did not give Conway notice and demand before the NFTL filing, thus invalidating the filing and rendering IRS Appeals' determination an abuse of discretion, the Court need not address this argument. See *supra* note 5.

notice and demand when he sent Conway the Letter 3164B, the lien notice, and Conway's Forms 3552. Alternatively, respondent argues that he did not need to issue notice and demand to Conway because Conway's role as National's CEO put him on notice of the unpaid amounts and respondent's demand for payment. The Court disagrees with both of respondent's arguments.

First, the Letter 3164B did not constitute valid notice and demand. The Letter 3164B merely reflected that unpaid taxes were owed but did not state the amounts, types, or periods of the unpaid taxes. Respondent contends that the Letter 3164B did not have to state the amounts owed because, by the time respondent issued the Letter 3164B, Conway's multiple communications with IRS Appeals (before the assessments) regarding the amounts of the unpaid TFRPs had provided him with constructive notice. Even if Conway had previously seen the proposed assessments, section 6303(a) required respondent, after making an assessment of tax, to either leave notice and demand of payment at Conway's "dwelling or usual place of business" or mail it to his last known address. Cf. *Resyn Corp. v. United States (In re Resyn Corp.)*, 945 F.2d 1279 (3d Cir. 1991) (IRS' filing of a proof of claim in bankruptcy did not satisfy section 6303(a) because it did not employ either of these notification methods). Therefore, since the Letter 3164B gave notice of nothing other than that unpaid taxes were owed, it did not constitute a valid postassessment notice and demand.

Next, the lien notice did not constitute valid notice and demand under section 6303 and section 6321. Respondent's argument assumes that the lien notice issued to Conway on June 1, 2006, can serve as both notice and demand under section 6303 and notice under section 6320. This assumption is flawed. A tax lien imposed under section 6321 arises at the time of assessment, see sec. 6322, and is enforceable when a "person liable to pay any tax neglects or refuses to pay the same *after* demand", sec. 6321 (emphasis added). Moreover, section 6320(a)(1) requires the Commissioner to notify "the person *described in section 6321*" of the NFTL filing. (Emphasis added.) This person is the person liable to pay who has refused to pay *after demand*. Thus, the Commissioner must issue notice under section 6320(a)(1) only after demand has been made and the person neglects or refuses to

pay. Therefore, no notice can serve as both assessment notice and demand under section 6303 and also postlien notice under section 6320(a)(1).

Unlike the statutory requirements above that the postassessment notice and demand precedes the postlien notice, respondent did the reverse. On June 1, 2006, respondent issued the lien notice to Conway. On June 6, 2006, respondent issued to Conway the Forms 3552, notice of tax due. Thus, the NFTL filed on May 26, 2006, predated the notice and demand for payment reflected on Forms 3552 issued to Conway on June 6, 2006. Similarly, the Forms 3552 issued to Conway on June 6, 2006, even though constituting valid notice and demand under the applicable regulation, cannot support the instant NFTL filing because the filing predated the issuance of the Forms 3552.

Alternatively, respondent argues that he did not need to issue notice and demand to Conway because Conway's role as National's CEO put him on notice of the unpaid amounts and respondent's demand for payment. Respondent relies on *Jersey Shore State Bank v. United States*, 479 U.S. 442 (1987), to support his argument. Respondent's reliance on *Jersey Shore* is misplaced. The penalty imposed on the bank in *Jersey Shore* was nonassessable and not subject to administrative collection procedures. *Id.* at 447. Thus, the Supreme Court's reasoning in *Jersey Shore* does not support the proposition that any notice Conway may have had eliminated the need for respondent to issue notice and demand before the lien on Conway's property arose.

Because respondent failed to give notice and demand before filing the NFTL, the NFTL filing was premature and respondent should have withdrawn the NFTL pursuant to section 6323(j)(1)(A). The Appeals team manager's verification that the requirements of applicable law had been met was therefore incorrect, and respondent's determination to sustain the NFTL filing was an abuse of discretion.

To reflect the foregoing,

*Appropriate decisions will be entered.*