**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| RAYMOND T. NAKANO, *Plaintiff-Appellant*, | No. 11-18013 |
| v. | D.C. No. 2:08-cv-01026-ROS |
| UNITED STATES OF AMERICA, *Defendant-Appellee.* | OPINION |

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, Senior District Judge, Presiding

Argued and Submitted
January 16, 2014—San Francisco, California

Filed February 18, 2014

Before: Diarmuid F. O'Scannlain, Susan P. Graber,
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Graber

## SUMMARY[*]

### Tax

The panel affirmed the district court's summary judgment in favor of the government in a tax refund action after the Internal Revenue Service assessed unpaid excise taxes against plaintiff pursuant to 26 U.S.C. § 6672.

Plaintiff, a former vice president and chief financial officer of National Airlines, Inc., contended that his failure to pay the excise tax was not "willful" under § 6672(a)—which provides for personal liability for those required to collect such excise taxes who willfully fail to transfer them to the federal government—because of the airline's bankruptcy. The panel was unpersuaded by plaintiff's contention that the airline's funds were encumbered by its bankruptcy obligations, such that the failure to pay excise taxes was not willful. The panel also was unpersuaded by plaintiff's contention that § 6672 liability does not apply to excise tax payments deferred under the Air Transportation Safety and System Stabilization Act, which gave airlines an opportunity to defer transfer of the third-quarter 2001 excise taxes for a few weeks in response to the terrorist attacks on September 11, 2001, but did not amend plaintiff's obligation to hold excise taxes in trust for the federal government under § 6672.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Richard D. Salgado (argued) and Laura L. Gavioli, SNR Denton US LLP, Dallas, Texas, for Plaintiff-Appellant.

Jennifer M. Rubin (argued) and Robert W. Metzler, Attorneys, and Kathryn Keneally, Assistant Attorney General, Tax Division, United States Department of Justice, Washington, D.C., for Defendant-Appellee.

**OPINION**

GRABER, Circuit Judge:

Plaintiff Raymond T. Nakano served as Senior Vice President and Chief Financial Officer of National Airlines, Inc. ("National"), from its founding in 1995 until it filed for Chapter 7 bankruptcy in May 2003. The Internal Revenue Service ("IRS") assessed unpaid excise taxes against Plaintiff personally, pursuant to 26 U.S.C. § 6672. He then brought this civil action against the United States, pursuant to 26 U.S.C. § 7422, for a refund of taxes erroneously assessed. The government filed a counterclaim for the unpaid balance of the tax assessments. The district court granted summary judgment to the government on both the claim and the counterclaim.

In considering this timely appeal, we address two questions: (1) whether the district court erred in holding that Plaintiff's failure to pay the excise taxes was "willful" within the meaning of 26 U.S.C. § 6672(a) despite the airline's bankruptcy and (2) whether § 6672 liability applies to excise tax payments deferred under the Air Transportation Safety

and System Stabilization Act ("Stabilization Act"), Pub. L. No. 107-42, § 301(a)(1) (2001). Reviewing those legal questions de novo, *Ilko v. Cal. State Bd. of Equalization (In re Ilko)*, 651 F.3d 1049, 1052 (9th Cir. 2011) (order), we affirm. We hold that: (1) assets are "encumbered" for purposes of § 6672 only if "the taxpayer is legally obligated to use the funds for a purpose other than satisfying the preexisting employment tax liability and if that legal obligation is superior to the interest of the IRS in the funds," *Honey v. United States*, 963 F.2d 1083, 1090 (8th Cir. 1992), a test that is not met here; and (2) the Stabilization Act does not "allow the airlines to use the excise taxes as working capital" and does not defeat trust status for unpaid excise taxes for purposes of personal liability under § 6672, *Conway v. United States*, 647 F.3d 228, 236 (5th Cir. 2011).

Federal law requires all airlines to collect certain excise taxes from passengers and to remit those taxes, held in trust, to the federal government at quarterly intervals. 26 U.S.C. §§ 4261, 4291, 7501. The airline passengers have original liability for the excise taxes, but the airlines incur liability for the taxes if they fail to transfer the trust funds on time. *Begier v. Comm'r*, 496 U.S. 53, 55 (1990).

National began flying passengers in 1999, but it did not report a profit for any year during its operation. The airline filed for Chapter 11 bankruptcy on December 6, 2000. Shortly before that filing, National mailed to the IRS its quarterly excise payment check for the third quarter of 2000, in the amount of $1,832,501.01. The IRS received and deposited the check but, before it could clear, National restructured its accounts under Chapter 11 rules, and the check was returned unpaid. National made no additional

efforts to pay the quarterly excise taxes, but it did begin to pay other excise taxes collected during the bankruptcy period.

In response to the terrorist attacks on September 11, 2001, Congress passed the Stabilization Act. Among many other provisions, the Act gave airlines an opportunity to defer transfer of the third-quarter 2001 excise taxes for a few weeks after the usual due date. Stabilization Act § 301(a)(1). The Act included a grant of discretionary authority to the Secretary of the Treasury to further extend the third-quarter 2001 and fourth-quarter 2001 excise tax due dates until January 15, 2002, an option that the Secretary exercised. *Id.* § 301(a)(1)(A). The Act also provided that airlines could collect direct government grants. *Id.* § 101(a). National received such a grant, in the amount of $21 million. It did not pay excise taxes during the deferral period.

On January 15, 2002, the deadline set by the IRS to transfer excise taxes collected, National filed a return, without enclosing payment, and requested a six-month extension. National did not submit payment for those taxes after requesting the extension, but it did submit payments and returns for later quarters. On January 30, 2002, National again filed a return for fourth-quarter 2001 excise taxes, but again failed to submit any payment.

Nine months later, National ceased operations and, on May 7, 2003, the airline converted its bankruptcy to Chapter 7. On January 29, 2003, during Chapter 7 proceedings, the IRS demanded that National remit unpaid excise taxes in the amount of $11,572,151.91. Following an administrative appeal of an earlier assessment, the government reissued assessments against Plaintiff personally in the amounts of $148,325.00, $3,497,448.32, and $4,803,626.85, for the

taxable quarters ending September 30, 2000, September 30, 2001, and December 31, 2001, respectively, plus statutory interest. Plaintiff paid a nominal amount of the assessments and then filed an administrative refund claim, which the IRS denied.

Plaintiff then filed the present action in district court for recovery of taxes paid and an abatement of the amounts owing. The government counterclaimed for the amount owing and followed with a motion for summary judgment. Plaintiff moved to dismiss the government's counterclaim. The district court denied Plaintiff's motion, granted the government's motion, and entered judgment for the government in the amount of $11,553,586.11, which represents the full amount due from all three quarters plus statutory interest through November 30, 2011.

An individual can incur personal liability under 26 U.S.C. § 6672(a) for unpaid excise taxes:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

To impose personal liability, the statute requires that the individual (1) was "required to collect, truthfully account for, and pay over the withholding taxes" (commonly known as a

"responsible person") and (2) "willfully failed to meet one or more of these obligations." *United States v. Sotelo*, 436 U.S. 268, 274 (1978) (internal quotation marks omitted). In an action to collect taxes, the government bears the initial burden of proof. *Oliver v. United States*, 921 F.2d 916, 919 (9th Cir. 1990). The government satisfies its burden by introducing evidence of the tax assessment under § 6672. *Id.* The burden then shifts to the taxpayer to prove that he is not liable. *Id.*

On appeal, Plaintiff does not challenge the district court's finding that he is a "responsible person" for purposes of § 6672.[1] But he does argue that his failure to pay over the excise taxes was not "willful" under the second prong of the *Sotelo* standard. In particular, Plaintiff asks us to adopt a rule that the element of willfulness under § 6672 cannot be satisfied by a failure to use "encumbered" funds to make excise tax payments, *Elmore v. United States*, 843 F.2d 1128, 1133–34 (8th Cir. 1988), and to hold that National's bankruptcy obligations rendered all funds encumbered as a matter of law for the purpose of analyzing willfulness under § 6672.

In general, "[w]illfulness, within the meaning of § 6672, has been defined as a voluntary, conscious and intentional act to prefer other creditors over the United States." *Davis v. United States*, 961 F.2d 867, 871 (9th Cir. 1992) (internal quotation marks omitted). Plaintiff does not dispute that his preference for other creditors was voluntary, conscious, and intentional. The failure to pay over the excise taxes was

---

[1] Michael Conway, who was the founder, CEO, president, and chairman of the board of National did argue, unsuccessfully, that he was not a "responsible person." *Conway*, 647 F.3d at 232–34.

therefore "willful" unless Plaintiff's legal argument prevails. It does not.

We have yet to define what renders assets encumbered and thereby unavailable to support a finding of willful non-payment of excise taxes under § 6672. *See Purcell v. United States*, 1 F.3d 932, 938–39 (9th Cir. 1993) (declining to reach the issue of what constitutes "encumbered funds" for § 6672 purposes). Every other circuit to have addressed the issue has established a narrow rule that only a legal prohibition on the expenditure of funds renders the assets encumbered.

The leading case to take this view is *Honey*, 963 F.2d at 1089–90. There, the Eighth Circuit considered in detail what funds are "encumbered" and "unencumbered" in this context. The court examined the text of the statute, the sparse existing precedents, and especially the purpose of § 6672. *Id.* The court concluded that the purpose of the statute is to ensure that the excise tax is paid and that the statute must be broadly construed to permit the government to reach those who are responsible for the corporation's failure to pay the taxes owed. *Id.* at 1090. The court distilled the applicable rule to the following: "funds are encumbered only where the taxpayer is legally obligated to use the funds for a purpose other than satisfying the preexisting employment tax liability and if that legal obligation is superior to the interest of the IRS in the funds." *Id.*

Every other circuit to have considered the question agrees with the Eighth Circuit's analysis and definition. *See Bell v. United States*, 355 F.3d 387, 394–95 (6th Cir. 2004) (adopting the *Honey* definition); *United States v. Kim*, 111 F.3d 1351, 1359 (7th Cir. 1997) (same); *Barnett v. Comm'r*, 988 F.2d 1449, 1458 (5th Cir. 1993) (same). In

*Purcell*, we noted a broader rule, offered by the Eastern District of Michigan Bankruptcy Court, that encompassed restrictions on assets imposed by a creditor, beyond those imposed by law. 1 F.3d at 939 (citing *In re Premo*, 116 B.R. 515, 535 (Bankr. E.D. Mich. 1990)). But the Sixth Circuit has since rejected that rule and has adopted explicitly the Eighth Circuit's narrower definition. *Bell*, 355 F.3d at 395; *see also Huizinga v. United States*, 68 F.3d 139, 145 (6th Cir. 1995) (citing approvingly the *Honey* definition). We, too, are persuaded by *Honey* and now adopt the quoted test as our own.

Applying that test, we conclude that Plaintiff failed to satisfy his burden to show that the assets he had at his disposal as a "responsible person" were "encumbered" and thereby unavailable to satisfy his obligations under § 6672. *Purcell*, 1 F.3d at 939. He argues that, because the excise taxes were post-Chapter 11 petition taxes, 11 U.S.C. § 503(b)(1)(A)–(B) mandates that operating expenses take priority over taxes due. We read the statute differently. Section 503(b)(1)(A)–(B), by its clear terms, mandates *equally* the payment of operating expenses and taxes. Operating expenses do not gain a higher priority. In short, the district court properly held that Plaintiff willfully failed to pay over excise taxes that he was obligated to pay as a responsible person.

In addition to arguing that § 6672 liability was improperly applied to him, Plaintiff challenges the applicability of § 6672 liability to all excise tax payments afforded a deferred due date under the Stabilization Act. He offers two theories. First, he contends that the Stabilization Act exempted implicitly the deferred excise taxes from § 6672 liability by directing that the collected taxes be used for other purposes,

thereby undermining the taxes' status as funds held in trust. Second, Plaintiff relies on *Slodov v. United States*, 436 U.S. 238 (1978), for the principle that § 6672 liability cannot apply where it would frustrate the purpose of a statute; in his view, Congress intended that the deferred funds be used for operational expenses. Neither theory avails Plaintiff.

As a threshold matter, it bears noting that, although the Fifth Circuit was not presented with arguments identical to those offered by Plaintiff here, that court expressly applied § 6672 to excise tax payments that National deferred under the Stabilization Act and held National's Chief Executive Officer personally liable under § 6672. *Conway*, 647 F.3d 228. Specifically, the Fifth Circuit held that nothing in the Stabilization Act evinced a congressional intent to authorize the airlines to use the trust funds as working capital or to "render payment of the excise taxes beyond the ordinary course of business." *Id.* at 236. We see no reason to depart from the approach of our sister circuit.

Ordinarily, excise taxes collected by a carrier on behalf of the government are held in trust, and the funds cannot be used by the carrier for any other purpose. *See Begier*, 496 U.S. at 55–56 ("Because the amount of these taxes is 'held to be a special fund in trust for the United States,' [26 U.S.C.] § 7501, they are often called 'trust-fund taxes.'"). The carrier incurs liability for the trust fund taxes because, once the carrier collects them, the taxes are credited as paid by the passenger. *See Slodov*, 436 U.S. at 242–45 (describing third-party collector liability in the context of employment taxes held in trust). Without recourse to the third-party collector, the government would have no means to collect the taxes due. *Id.* at 243. The carrier is then obligated to pay over those taxes to the government on regular intervals or risk, among

other forms of liability, personal liability for its officers under § 6672. 26 U.S.C. §§ 4261(d), 4263(d), 4291.

Out of concern for the airline industry following the tragedy on September 11, 2001, Congress passed the Stabilization Act, which extended the due date for excise tax deposits as follows:

SEC. 301. EXTENSION OF DUE DATE FOR EXCISE TAX DEPOSITS; TREATMENT OF LOSS COMPENSATION

(a) EXTENSION OF DUE DATE FOR EXCISE TAX DEPOSITS.—

(1) IN GENERAL.—In the case of an eligible air carrier, any airline-related deposit required under section 6302 of the Internal Revenue Code of 1986 to be made after September 10, 2001, and before November 15, 2001, shall be treated for purposes of such Code as timely made if such deposit is made on or before November 15, 2001. If the Secretary of the Treasury so prescribes, the preceding sentence shall be applied by substituting for "November 15, 2001" each place where it appears—

(A) "January 15, 2002"; or

(B) such earlier date after November 15, 2001, as such Secretary may prescribe.

Stabilization Act § 301(a)(1).  With that text, Congress passed, and the President signed into law, a mandatory deferral of carriers' quarterly excise tax due date from on or after September 11, 2001, until November 15, 2001, or until January 15, 2002, at the discretion of the Secretary of the Treasury.  *Id.*  Plaintiff contends that this Act rendered the deferred payments not trust funds under 26 U.S.C. § 7501 and, therefore, not subject to § 6672 liability.

"The starting point in discerning congressional intent is the existing statutory text . . . .  It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (citation and internal quotation marks omitted).  "The plain meaning of a statute is always controlling unless that meaning would lead to absurd results." *SEC v. McCarthy*, 322 F.3d 650, 655 (9th Cir. 2003) (internal quotation marks omitted).  It is only when statutory terms are ambiguous, that is, open to more than one plausible interpretation, *Chickasaw Nation v. United States*, 534 U.S. 84, 90 (2001), that courts may look to legislative history, *McCarthy*, 322 F.3d at 655.

The text of the law provides no support for the theory that Congress intended the Stabilization Act to strip trust status from collected excise taxes.  As the unambiguous statute makes clear, it was enacted simply to authorize a short mandatory deferral, plus the possibility of a four-month discretionary deferral upon approval by the Secretary of the Treasury.  Nothing in the text of the statute addresses the possibility that the trust funds could be used for other purposes or that Congress intended to repeal 26 U.S.C.

§ 7501.**²** *See Branch v. Smith*, 538 U.S. 254, 273 (2003) ("An implied repeal will only be found where provisions in two statutes are in 'irreconcilable conflict,' or where the latter Act covers the whole subject of the earlier one and 'is clearly intended as a substitute.'"). An amendment to § 6672 to suspend personal liability for the deferred payments cannot be made by implication. *Reg'l Rail Reorg. Act Cases*, 419 U.S. 102, 133–34 (1974). Moreover, there is no conflict, let alone an irreconcilable conflict, between a provision deferring for two to four months a particular payment and the trust status of the deferred funds.

Indeed, Plaintiff makes no textual argument to support his theory that the Stabilization Act amended implicitly Plaintiff's trust obligations for § 6672 purposes. Nor does he suggest that the text is ambiguous. Rather, citing *United States v. Champlin Refining Co.*, 341 U.S. 290, 298 (1951), he contends that the *only* reasonable purpose for the Stabilization Act deferral was to make those funds available for operating expenses and that to hold otherwise would render the Act wholly without purpose, in contravention of basic principles of statutory interpretation. Plaintiff relies on

---

**²** Title 26 U.S.C. § 7501(a) provides:

Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose.

two sources to support his assertion.  Neither helps him, even assuming that we may look past the text to legislative history.

First, Plaintiff cites a few minor comments from the House floor debates to the effect that the Act was intended to keep airlines in operation.  Those comments, though, addressed the Act generally and did not reference even indirectly the excise tax deferral provision.

Second, Plaintiff cites a news article from the *Philadelphia Inquirer* in which *carriers* suggested that a deferral of the due date for excise taxes would mean that the funds could be used for daily operating expenses.  But that article sheds no light on congressional purpose.  Not only did the article contain only the carriers' view, but it post-dated the enactment of the statute in question.

Nor is Plaintiff correct as a matter of common sense, which he urges us to employ.  There are other reasons, besides freeing funds for daily operating expenses, why Congress could have enacted the deferral.  For example, as the district court noted, Congress could simply have intended to allow carriers to enjoy the time value of money.  That concept encompasses not only the receipt of interest on the deferred payments, but also the ability to hold the funds to increase cash reserves.  Larger cash reserves could make a company appear less risky and therefore more attractive to investors.

In short, we agree with the Fifth Circuit that we need not examine legislative history, because the statute is clear. *Conway*, 647 F.3d at 236.  But no matter how far we pursue Plaintiff's argument, we do not share his view that Congress meant a very small benefit (a short delay in paying one or two

quarters of excise taxes) to signal a massive change in the fundamentals of the long-standing statutory operation of excise taxes. Congress' only discernable purpose was simply to provide a brief deferral for carriers' excise tax payments. Interpreting the deferral provision of the Stabilization Act to serve only that small purpose satisfies any obligation we might have under *Champlin Refining Co.*, 341 U.S. at 298.

Plaintiff's final argument is that the Supreme Court's decision in *Slodov*, 436 U.S. 238, precludes application of § 6672 liability to the deferred tax payments because doing so would frustrate congressional purpose. We disagree for two reasons. First, the situation here is not like the one that the Supreme Court considered. Second, the rule in *Slodov* rested narrowly on statutory text.

In *Slodov*, a new owner had taken control of a business after the previous management had dissipated all liquid assets, including the collected taxes that have trust status under 26 U.S.C. § 7501. 436 U.S. at 240–41. The Supreme Court held that § 7501 trust status did not "impress a trust on after-acquired funds." *Id.* at 259. Because the after-acquired funds were not trust funds under § 7501, the new owner did not incur § 6672 liability for failing to pay over the funds. *Id.* at 259–60.

By contrast, here, *Plaintiff himself* dissipated the collected excise taxes held in trust under § 7501. Thus, *Slodov* does not support a conclusion that the funds were no longer trust funds at the time of dissipation. As we held in *Davis*, the *Slodov* rule does not apply to existing management. *Davis*, 961 F.2d at 872–73.

In addition, contrary to Plaintiff's contention, the Court's holding was grounded in the plain text of § 7501, *Slodov*, 436 U.S. at 255–56 (recognizing that the text of § 7501 applied to funds "collected" or "withheld" in the past tense and did not address the status of later-acquired funds). The Court did not establish a broader rule that § 6672 liability cannot apply whenever it might appear to frustrate the administration of a separate regulatory scheme.

**AFFIRMED.**